706 F.2d 1534
 Anthony ANTONE, Petitioner,
v.
Charles STRICKLAND, Superintendent, Florida State Prison,
Louie L. Wainwright, Secretary Florida Department
of Offender Rehabilitation, and Jim
Smith, Attorney General, State
of Florida, Respondents.
 No. 82-5120.
 United States Court of Appeals,
Eleventh Circuit.
 June 13, 1983.
As Amended Sept. 6, 1983.
 
 Thomas B. McCoun, III, Louderback & McCoun, St. Petersburg, Fla., for petitioner.
 Charles Corces, Jr., Asst. Atty. Gen., Tampa, Fla., for respondents.
 Appeal from the United States District Court for the Middle District of Florida.
 Before FAY and KRAVITCH, Circuit Judges, and YOUNG,* District Judge.
 FAY, Circuit Judge:
 
 
 1
 Anthony Antone, convicted of first degree murder and upon a recommendation of the jury in accordance with Fla.Stat. Section 921.141 (1974), sentenced to death, filed a petition for writ of habeas corpus in the United States District Court pursuant to 28 U.S.C. Section 2254. The district court denied the relief requested. On appeal, Antone advances six contentions: 1) that the judgment and sentence of death is contrary to the Eighth and Fourteenth Amendments; 2) that the Florida Supreme Court in reviewing petitioner's sentence unconstitutionally considered extra-record material; 3) that the prosecutor's nondisclosure of a witness and statement violated the Sixth and Fourteenth Amendments; 4) that petitioner was denied effective assistance of counsel during the voir dire and penalty phase of the trial; 5) that the prosecutor's exclusion of death scrupled jurors was unconstitutional; and 6) that petitioner was arrested in violation of his Fourth Amendment rights. After consideration of Antone's contentions, we affirm, but remand to the district court to consider the effects of a pending United States Supreme Court decision.
 
 
 2
 The evidence upon which Antone was convicted and sentenced showed that petitioner arranged the contract murder of Richard Cloud, a former City of Tampa Police Detective. Antone provided the murder gun, test fired it into a couch in his home, specially equipped it, and disposed of the gun after the murder. Antone also paid $1,500 "front money" before the murder and between $7,000 and $8,000 after the murder.
 
 
 3
 After Antone's conviction and sentence of death on August 27, 1976, he appealed to the Florida Supreme Court which remanded the case to the trial court to determine whether there had been a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[1] Antone v. State, 355 So.2d 777 (Fla.1978). After a hearing, the trial court determined that there had not been a Brady violation. On March 27, 1980, the Florida Supreme Court affirmed petitioner's conviction and sentence. Antone v. State, 382 So.2d 1205 (Fla.1980). The United States Supreme Court denied a petition for writ of certiorari. Antone v. State, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980).
 
 
 4
 The Governor of Florida signed a Death Warrant requiring petitioner's execution. Petitioner then filed two motions for post conviction relief in the Circuit Court for Hillsborough County, Florida. The court held an evidentiary hearing and denied the motions. The petitioner appealed to the Florida Supreme Court which affirmed the denial of the motions, denied a motion for stay of execution and petition for error coram nobis. Antone v. State, 410 So.2d 157 (Fla.1982).
 
 
 5
 Petitioner then filed a petition for writ of habeas corpus in the United States District Court for the Middle District of Florida. The district court denied the petition but granted a stay of execution pending appeal. We remanded the case back to the district court requesting more complete findings of fact and conclusions of law. The district court entered its Memorandum of Decision on February 18, 1982.[2]
 
 I. IMPOSITION OF THE DEATH SENTENCE
 A. JURY INSTRUCTIONS ON MITIGATING FACTORS
 
 6
 During the penalty phase of Antone's trial, the state trial judge, without objection from either party, instructed the jury on aggravating factors, and then stated "the mitigating factors which you may consider are these ...." and listed the seven mitigating factors enumerated by Fla.Stat. Section 921.141 (1975).[3] Petitioner now argues that this instruction impliedly limited the jury's consideration of mitigating circumstances in contravention of Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). Relying on Washington v. Watkins, 655 F.2d 1346 (5th Cir.1981), cert. denied, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982), petitioner contends that the jury was effectively precluded from consideration of any non-statutory mitigating factors.
 
 
 7
 Antone did not object to the jury instruction at trial or on direct appeal. Florida Rules of Criminal Procedure, Rule 3.390(d) (1973) specifically provided that jury instructions must be objected to before the jury retires to consider its verdict. The state therefore argues that Antone is in procedural default and that federal court consideration of the jury instruction in a habeas corpus proceeding is barred by Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). In Sykes, the United States Supreme Court held that a state prisoner must demonstrate "cause and prejudice" in order to advance in a federal habeas corpus proceeding a claim barred from consideration by a valid state procedural rule. The Supreme Court recently reaffirmed this principle in Engle v. Isaac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), stating that "any prisoner bringing a constitutional claim to the federal courthouse after state procedural default must demonstrate cause and actual prejudice before obtaining relief." 456 U.S. at 129, 102 S.Ct. at 1572.
 
 
 8
 Antone argues that he was excused from objecting at trial because the law at that time indicated that only statutory mitigating circumstances could be considered and Lockett v. Ohio was two years away. Antone's argument that counsel could not reasonably be expected to anticipate the problems of Lockett is undermined by trial counsel's motion to dismiss the indictment which addressed the mitigating factors argument.[4] Further, the "futility of presenting an objection to the state courts cannot alone constitute cause for failure to object at trial." Engle v. Isaac, 456 U.S. at 130, 102 S.Ct. at 1572.
 
 
 9
 Apart from the question of cause, petitioner must also make a showing of prejudice. Prior to Wainwright v. Sykes, the Supreme Court stated that
 
 
 10
 The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned.' "
 
 
 11
 Henderson v. Kibbe, 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).[5] (citations omitted). In making such a determination, the entire charge to the jury must be examined to determine whether the issues and law presented to the jury were adequate. Davis v. McAllister, 631 F.2d 1256, 1260 (5th Cir.1980), cert. denied, 452 U.S. 907, 101 S.Ct. 3035, 69 L.Ed.2d 409 (1981).
 
 
 12
 Antone has not established that the jury perceived that in deciding whether to recommend death it was denied consideration of any nonstatutory mitigating factors. On this appeal, Antone advances two nonstatutory mitigating factors which could have been considered by the jury: disparity of sentences between the codefendants and the effects of brain surgery upon the defendant. Petitioner's counsel did argue to the jury the "justice" of one codefendant plea bargaining for a thirty-five year sentence and another defendant, petitioner, being sentenced to death. There was nothing in the jury instructions that precluded the jury from considering this fact. As to the brain surgery, Lockett concerns any factor that "the defendant proffers as a basis for a sentence less than death." 438 U.S. at 604, 98 S.Ct. at 2965. Brain surgery was not proffered at trial,[6] but even if it had been, the jury would not have been precluded from considering it by the court's instructions.[7]
 
 
 13
 Antone has not shown that the jury was denied the use of any nonstatutory mitigating factors in deciding to recommend the death penalty and thus the actual prejudice test is not met. Further, Antone has not advanced sufficient cause for the failure to object to the instructions at trial. Therefore, Wainwright v. Sykes bars our consideration of the merits of Antone's claim concerning the jury instruction on mitigating factors.
 
 B. DISPARITY IN SENTENCING
 
 14
 Antone relates that of the four persons shown to have been involved with the murder of Richard Cloud only one, petitioner, received the death penalty.[8] Based on this, Antone contends that the Florida death penalty statute is unconstitutional as applied in this case.
 
 
 15
 In adopting the jury's recommendation of death, the trial court found that petitioner was "the most major and by far the dominant participant, the master criminal mind and mover of the entire plan and sorted [sic] act." (R. State Proceedings, Vol. VII at 928.) On direct appeal, the Florida Supreme Court found that petitioner was "the mastermind of this operation. He supplied the gun, paid the money from his pocket, and pressured Haskew to complete the task. His participation cannot, under any view of this record, be termed minor. Without Antone's participation, the murder would not have come to fruition." Antone v. State, 382 So.2d 1205, 1216 (Fla.1980).
 
 
 16
 It is not the role of the federal courts in Section 2254 proceedings to retry the circumstances contributing to the state's imposition of the death penalty. Spinkellink v. Wainwright, 578 F.2d 582, 605 (5th Cir.1978). Only if a petitioner can show "that the facts of his case are so clearly undeserving of capital punishment that to impose it would be patently unjust and would shock the conscience" might federal court intervention be warranted. Id. at 606 n. 28. Petitioner Antone has made no such showing.
 
 
 17
 C. THE AGGRAVATING FACTOR "ESPECIALLY HEINOUS, ATROCIOUS OR CRUEL"
 
 
 18
 Antone contends that the heinous, atrocious and cruel aggravating factor is, as now construed, unconstitutionally vague and overbroad. The state trial judge found that the murder of Richard Cloud was "particularly a heinous, cruel and vicious crime," (R. State Proceedings, Vol. VII at 927), but did not elaborate. On appeal, the Florida Supreme Court stated that there "may be a question" as to whether heinous, atrocious and cruel was an appropriate aggravating circumstance in petitioner's case. Antone v. State, 382 So.2d 1205, 1216 (Fla.1980). The court, however, concluded that because it approved of the other three aggravating circumstances found by the trial judge and of the fact that the trial judge found no mitigating factors, "an error in finding this aggravating circumstance does not invalidate the imposition of the death sentence." Id. at 1216.
 
 
 19
 Antone does not present a situation controlled by Stephens v. Zant, 631 F.2d 397 (5th Cir.1980), reh. denied and modified, 648 F.2d 446 (5th Cir.1981), certified to the Supreme Court of Georgia, 456 U.S. 410, 102 S.Ct. 1856, 72 L.Ed.2d 222 (1982). In Stephens, the state supreme court ruled that one of the aggravating circumstances presented to the jury was unconstitutionally vague. In Antone, the Florida Supreme Court intimated that the facts of Antone's case might not be encompassed by the judicial interpretation of the statutory aggravating circumstance. We have recently considered the effect of the Florida Supreme Court's invalidation on non-constitutional grounds of one of several aggravating factors in the absence of mitigating factors. In Ford v. Strickland, 696 F.2d 804 (11th Cir.1983) (en banc), we noted that although "the precise impact of the Supreme Court's recent actions in Stephens cannot be known at this juncture," "when there are proper state law premises, a death sentence may be sustained by a reviewing court so long as at least one of a plurality of statutory aggravating circumstances is valid and supported by the evidence." Id. at 814. We reasoned in Ford that because the sentencing judge found no mitigating circumstances and five of the statutory aggravating circumstances found were upheld, "the [Florida Supreme] court logically presumed the weighing process would have reached the same outcome even had the sentencing court not added to the scales those aggravating circumstances found impermissible." This reasoning is equally applicable in Antone's case. We therefore decline to engage in the collateral review of a factor upon which the affirmance of Antone's death sentence was not predicated. Our declination conforms to the United States Supreme Court's recent decision in Barclay v. Florida, --- U.S. ----, 103 S.Ct. 3418, 76 L.Ed.2d --- (1983), where the Court concluded "there is no reason why the Florida Supreme Court cannot examine the balance struck by the trial judge and decide that the elimination of improperly considered aggravating circumstance could not possibly affect the balance." Id. at ----, 103 S.Ct. at 3445.
 
 II. THE BROWN ISSUE
 
 20
 Antone formerly joined with 122 other Florida death row inmates in filing an applicable for extraordinary relief and petition for habeas corpus in the Florida Supreme Court. The petitioners challenged the Florida Supreme Court's practice of receiving nonrecord information in connection with the review of capital cases. The Florida Supreme Court dismissed the petition. Brown v. Wainwright, 392 So.2d 1327 (Fla.1981), cert. denied, 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981).
 
 
 21
 Antone again raises the issue of the Florida Supreme Court's practice of receiving nonrecord information in reviewing capital cases. The Eleventh Circuit en banc has recently held that the Florida Supreme Court's statement in Brown that nonrecord information did not affect the judgment of the reviewing judges "ends the matter when addressed at the constitutional level." Ford v. Strickland, 696 F.2d at 811. Antone's claim is therefore foreclosed by Ford.
 
 III. THE EXCULPATORY WITNESS AND STATEMENT
 
 22
 Petitioner contends that the failure of the state to disclose the existence of a witness, Robert Bruns, and his statements violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Petitioner initially presented this issue to the state court in motions for post conviction relief under Florida Rules of Criminal Procedure, Rule 3.850. The state trial judge held a hearing and denied the motions. On appeal to the Florida Supreme Court, the court stated, "the ruling of the trial judge is supported by the evidence, and we find that there was no actual suppression of favorable evidence by the state." Antone v. State, 410 So.2d 157, 162 (Fla.1982). The court further noted that while the failure to disclose the name of Bruns may have violated a state rule of criminal discovery, this failure did not prejudice the defendant. Id. at 162.
 
 
 23
 When presented with the Brady issue in Antone's petition for habeas corpus, the district court found that petitioner could not overcome the presumption of correctness set forth in 28 U.S.C. Section 2254(d). No argument was advanced that any of the first seven exceptions applied and the district court found that the record fairly supported the state trial judge's decision in accordance with 28 U.S.C. Section 2254(d)(8). On appeal, Antone argues that he was never granted a full and fair hearing in state court, that the conclusions of the state court were not fairly supported by the record and that the state court's conclusions were both legal and factual. Antone received a full and fair hearing in state court and the record fairly supports the state judge's decision. The state courts found that there was no suppression of evidence by the prosecution. This finding concludes the issue under 28 U.S.C. Section 2254(d) and Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).
 
 IV. EFFECTIVE ASSISTANCE OF COUNSEL
 
 24
 Petitioner contends he was denied effective assistance of counsel at the voir dire and penalty phase of his trial. Again, the petitioner presented these claims of ineffective assistance of counsel to the state court in motions for post conviction relief under Florida Rules of Criminal Procedure, Rule 3.850. The state trial judge held a hearing and found that petitioner was represented by reasonably competent and effective counsel. The Florida Supreme Court upheld the trial court. Antone v. State, 410 So.2d 157, 163 (Fla.1982).
 
 
 25
 The district court carefully considered petitioner's claims of ineffective assistance of counsel and denied relief. After review of the district court's findings and the record on appeal, we must agree with the district court and reject petitioner's claims of ineffective assistance of counsel.
 
 
 26
 V. PROSECUTOR'S EXCLUSION OF DEATH SCRUPLED JURORS
 
 
 27
 On appeal, petitioner does not seriously dispute the district court's conclusion that the jury selection did not violate Witherspoon v. Illinois, 391 U.S. 510; 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). However, petitioner does contend that the prosecutor is not permitted to peremptorily challenge a prospective juror on the basis that the juror has voiced some scruples against imposing the death penalty but who cannot be excused for cause under Witherspoon. In petitioner's trial, this situation applies to a single juror, Mr. Delgado. As the district court noted, "Mr. Delgado stated during voir dire that he knew the petitioner and had lived only three blocks away from him for a number of years." We agree with the district court that there was certainly a separate and sufficient reason for the state to exercise a peremptory challenge against Mr. Delgado. Thus, the petitioner's legal argument is not supported by the facts of his case and its merits need not be considered.
 
 VI. WARRANTLESS ARREST IN THE HOME
 
 28
 The petitioner was arrested in his home without an arrest warrant prior to his trial in 1976. In 1980, the United States Supreme Court held that the Fourth Amendment "prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." Payton v. New York, 445 U.S. 573, 576, 100 S.Ct. 1371, 1375, 63 L.Ed.2d 639 (1980). In United States v. Johnson, 457 U.S. 537, 102 S.Ct. 2579, 73 L.Ed.2d 202 (1982), the Supreme Court held that Payton is to be applied retroactively to all convictions that were not yet final at the time the decision was rendered.[9] The Court did not address the retroactive reach of Payton to those cases which may still raise Fourth Amendment issues on collateral attack, noting "After Stone v. Powell, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the only cases raising challenges on collateral attack are those federal habeas cases in which the state has failed to provide a state prisoner with an opportunity for full and fair litigation of his claims." 457 U.S. 537, 562, n. 20, 102 S.Ct. 2579, 2594, n. 20. The district court correctly found that the state provided the petitioner with a full and fair opportunity to litigate his claim in the state courts and consequently the federal courts are precluded from considering the claim on a petition for writ of habeas corpus under Stone v. Powell.
 
 
 29
 Having considered each of the petitioner's claims and finding each of them to be without merit, the denial of habeas corpus relief under 28 U.S.C. Section 2254 is AFFIRMED.
 
 KRAVITCH, Circuit Judge, concurring specially:
 
 30
 In my view the majority opinion fails to explore adequately the relevant facts of the case and to provide sufficient, reasoned analysis of the claims presented. Because of this concern I write separately on several issues to record my reasons for concurring in the judgment, but not the opinion of the majority.
 
 JURY INSTRUCTIONS ON MITIGATING FACTORS
 
 31
 (MAJORITY'S ISSUE IA)
 
 Cause and Prejudice
 
 32
 As indicated in the majority opinion, Antone's trial counsel failed contemporaneously to object to the instructions on mitigating circumstances. Thus, the doctrine of Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) requires us to determine whether there was cause for the default and actual prejudice resulting therefrom. Engle v. Isaac, 456 U.S. 107, 130, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982).[1]
 
 
 33
 Cause and prejudice is a conjunctive standard, both prongs of which must be satisfied in order for procedural default to be excused and to allow a federal court to review the merits of a claim for habeas relief. Engle v. Isaac, 456 U.S. at 134 n. 43, 102 S.Ct. at 1575 n. 43, 71 L.Ed.2d at 804 n. 43. I agree with the majority that given Antone's counsel's "extraordinary vision" in foreseeing Lockett, indicated by his effort to dismiss the indictment on these grounds, there was no "cause" to have failed to object to the instruction on mitigating circumstances at the appropriate time. Cf. Ford v. Strickland, 696 F.2d at 858 (such "extraordinary vision" should not be expected of counsel as a matter of course in cases preceding the decision in Lockett ). The majority applies "cause and prejudice," finds no cause, yet proceeds unnecessarily to address the question of prejudice. See Engle v. Isaac, 456 U.S. at 134 n. 43, 102 S.Ct. at 1575 n. 43.
 
 
 34
 Moreover, in doing so, I believe it applied the incorrect standard. Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736-37, 52 L.Ed.2d 203 (1977), relied upon by the majority to conclude there was no prejudice, is inapplicable to analysis of a Lockett violation. Henderson, which involved a jury charge on causation in a noncapital case, held that the erroneous charge was of constitutional magnitude only if it "so infected the entire trial" that a due process violation occurred. Id.
 
 
 35
 A Lockett violation, however, is a direct violation of the eighth amendment as applied to the states through the fourteenth amendment. Lockett v. Ohio, 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978). In Lockett the Supreme Court held that a sentencer must not be precluded from considering as a mitigating factor any evidence of the defendant's character or record or the circumstances of the offense. Lockett v. Ohio, 438 U.S. at 604-05, 98 S.Ct. at 2964-65. If any relevant mitigating evidence proffered by the defendant is precluded by erroneous instructions, therefore, an eighth amendment violation is presented and provides a basis for habeas relief. Consequently, the majority's "infected the entire trial" due process analysis, relying on Henderson v. Kibbe, is irrelevant, unnecessary, and improper.[2]
 
 
 36
 Having quoted the Henderson v. Kibbe standard, the majority proceeds to apply a different test, one that examines the merits of the Lockett claim, and concludes that "[t]here was nothing in the jury instructions that precluded the jury from considering [evidence proffered in mitigation]." Maj. Op. at 1538. I disagree with the rationale of determining prejudice by reference to the merits of appellant's claim, see note 3 infra, and while the majority of this panel cannot be faulted for applying the reasoning of Ford v. Strickland, I differ with the majority's analysis of "prejudice" here.[3] Because, for purposes of analyzing cause and prejudice only, I believe we must assume the violation occurred, see note 3 supra, the only relevant inquiry in analyzing "prejudice" under the cause and prejudice standard when the allegation is a Lockett violation, is whether any nonstatutory, allegedly mitigating evidence was proffered at trial and, if so, whether that evidence was of a type, consideration of which the Supreme Court held in Lockett must not be precluded, i.e. was the evidence relevant to defendant's character, his record or the circumstances of the offense. Lockett v. Ohio, 438 U.S. at 605, 98 S.Ct. at 2965.
 
 
 37
 In the instant case, apparently the only nonstatutory mitigating evidence proffered by appellant was the discussion of the disparity of his potential death sentence and his co-defendant's thirty-five year penalty.[4] Whether or not consideration of the evidence of disparity of sentences would have affected the deliberations of the advisory jury or trial judge, is not for federal appellate judges, reviewing a habeas petition, to speculate. See Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (1982) ("On remand, the state courts must consider all relevant mitigating evidence and weigh it against the evidence of the aggravating circumstances. We do not weigh the evidence for them") (emphasis supplied). Cf. Presnell v. Georgia, 439 U.S. 14, 16-17, 99 S.Ct. 235, 236-37, 58 L.Ed.2d 207 (1978); Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948) (as discussed in Ford v. Strickland, 696 F.2d at 869-70). Thus, I would find that the actual prejudice prong of the cause and prejudice standard is satisfied.
 
 
 38
 Because, however, I agree that there is no cause for the default, I concur in the judgment of the majority that we may not consider the merits of Antone's Lockett claim.
 
 THE EXCULPATORY WITNESS AND STATEMENT
 
 39
 (Brady issue--Majority's Issue III)
 
 
 40
 Antone next raises a Brady issue. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In relation thereto he argues that the state court's factual findings deserve minimal deference because "he was never granted a full and fair hearing in state court, that the conclusions of the state court were not fairly supported by the record and that the state court's conclusions were both legal and factual." Maj. Op. at 1540. The sum total of the majority's treatment of the Brady issue is that "Antone received a full and fair hearing in state court and the record fairly supports the state judge's decision." Id.
 
 
 41
 Although I am in agreement with the majority's disposition, I cannot join its conclusory analysis of this issue. Furthermore, in my judgment the state courts which addressed Antone's Brady violation, and the federal district court, misapplied Brady and its progeny. Antone has raised a valid legal argument. Applying the wrong legal standard led the state court to rely upon the wrong facts. Hence Antone's Brady claim requires reexamining the law. All the fair and full hearings in the world could not correct the core legal flaw.
 
 
 42
 In denying Antone's Brady claim, the state courts and the federal habeas court relied on the factual finding that the state prosecutors "did not have knowledge of Gilford's statement to Bruns regarding Antone's ignorance of Cloud's murder until after it occurred and his after-the-fact participation in paying the money." Antone v. State, 410 So.2d at 162. See also Maj. Op. at 1539. No one denies that, regardless of whether the state had knowledge of the substance of Bruns' potential testimony, the state did have Bruns' name in its files, Antone v. State, 410 So.2d at 162, as Bruns was the one who gave police their first lead as to who perpetrated the murder. Indeed, the state courts ruled that failure to disclose Bruns' name violated Fla.R.Crim.P. 3.220 which requires the prosecutor "to disclose to defense counsel the names and addresses of all persons known to the prosecutor to have 'information which may be relevant to the offense charged, and to any defense with respect thereto.' " Antone v. State, 410 So.2d at 162, quoting Rule 3.220. Under my reading of Brady and its progeny, see United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967), the state's knowledge or assessment of the exculpatory or nonexculpatory nature of the evidence is irrelevant to the analysis of the type of case before us.[5] Only the state's knowledge of the existence of material information, exculpatory or not, is relevant. United States v. Agurs, 427 U.S. at 103, 96 S.Ct. at 2397, 2398-99. The materiality of the evidence is to be judged by varying standards depending on the factual posture of the case.
 
 
 43
 In United States v. Agurs, the Court set forth the three different situations to which the Brady rule could apply. Id. at 2397. The first is where a prosecutor uses testimony which he knows or should have known was perjured. In such a case a strict standard of materiality is applied. If there is any reasonable likelihood that the false testimony could have affected the judgment, a new trial is required. Id. No one contends that the facts of the instant case fall in this category.
 
 
 44
 The second possible Brady situation is where the defendant makes a pretrial request for specific information. Brady itself exemplifies this situation: defense counsel had requested the extra-judicial statements of the defendant's accomplice. Id. at 2398. The court in Agurs explained: "In Brady the request was specific [because] [i]t gave the prosecutor notice of exactly what the defense desired." Id. at 2399. Where a specific request is made, "if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge." Id. (emphasis added). In this situation, as in the first, the test of materiality is very strict. "When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable." Id. (emphasis added). In Brady the information which was not disclosed in response to a specific request was found to be immaterial to the guilt phase of the trial only because under the state rules of evidence it would have been inadmissible. However, it clearly was material to the capital sentencing phase of the trial because more relaxed rules of evidence there apply.[6] Therefore, a new sentencing proceeding was ordered.
 
 
 45
 The third type of situation to which Brady applies is where no request for information[7] or only a general request for all exculpatory matter, as opposed to a request for specific material, has been made. United States v. Agurs, 96 S.Ct. at 2399. Here only if the undisclosed information is exculpatory and is sufficiently material to have affected the result of the trial will a new trial be warranted. Id. at 2402.
 
 
 46
 We must determine into which of the three Brady situations the present case falls.
 
 
 47
 In my opinion Antone's attorney made a specific request for information. In a pretrial demand for discovery, counsel, tracing the language of Fla.R.Crim.P. 3.220, requested: "The names and addresses of all persons known to the prosecutor to have information which may be relevant to the offense charged, and to any defense with respect thereto." All that was required of the prosecutor to comply with the request was to examine his files on the Antone case and compile a list of the names and addresses of all persons related to the investigation. While the request may have been broad, depending on the number of names in the file, as in Brady "the request was specific. It gave the prosecutor notice of exactly what the defense desired." United States v. Agurs, 96 S.Ct. at 2399. The significant distinction between a general and a specific request for Brady purposes is that a specific request does not require the prosecutor to make a value judgment as to the exculpatory nature or degree of materiality of the requested information. In contrast, where there is no request or "merely a general request for exculpatory matter," id., the prosecutor must assess whether any particular material is exculpatory. To an extent this requires the prosecutor to analyze the evidence from the defendant's perspective, a role contradictory to the prosecutor's adversarial role. See Brady v. Maryland, 83 S.Ct. at 1197, discussing purpose of principle of Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935). Accordingly, only when, evaluated in retrospect,[8] the evidence is adjudged to have been exculpatory and material to the degree that it is likely to have affected the result will a new trial be ordered.
 
 
 48
 Here the request for names and addresses required no assessment on the part of the prosecutor as to the exculpatory value of the information. It only required disclosure of the names, including Bruns', in the prosecutor's file. Accordingly it was a specific request for information under the standards enunciated in United States v. Agurs, 96 S.Ct. at 2398-99.[9]
 
 
 49
 The state court found that even if there was a specific request for the identity of Bruns, "there is no reasonable likelihood that [anything to which Bruns could have testified] could have affected the outcome of the trial or sentence." Antone v. State, 410 So.2d at 160, quoting with approval state trial judge's findings.
 
 
 50
 As noted above, the Court in Agurs stated that "seldom, if ever" will the failure of the prosecutor to respond to a specific request for information be excused. Thus we must determine whether this is one of the rare cases where the failure is excusable. Although this is a close case, I conclude that it is one of the rare cases.
 
 
 51
 Appellant makes no serious argument that anything to which Bruns could have testified would have had a material impact on the determination of guilt. Rather he contends that Bruns' testimony would have been mitigating in the penalty phase because it would have refuted the evidence that he was the "mastermind" of Cloud's killing. The state court explicitly relied on the fact that he was the "mastermind" in imposing the death penalty. Antone v. State, 410 So.2d at 161; Antone v. State, 382 So.2d at 316.
 
 
 52
 During the guilt phase of the trial Antone testified that he had no involvement with the killing. Obviously the jury found this testimony incredible. At the sentencing proceeding, Antone's counsel argued that the state's evidence presented at the guilt phase established that Antone was no more culpable than his co-defendants, and "didn't pull the trigger [and] [ ] didn't originate the idea either." Trial Transcript at 1908. Appellant presented no evidence, testimony or arguments that he did not know of the killing until after-the-fact. This was never the theory on which he proceeded. Bruns' testimony that appellant was involved only after-the-fact, if used, would have contradicted the other theories on which appellant had relied. Given this conflict the evidence would not have been mitigating and could not have affected the outcome of the sentence.
 
 
 53
 I also conclude that there is no likelihood that the penalty would have differed if Bruns had testified that appellant was not the "mastermind" but a mere "go-between" in the overall scheme. As found by the state supreme court and supported by the record, "Bruns' testimony that Antone was the middleman was not new evidence; that fact had been established during the course of the original trial testimony. Antone was a middleman who organized, set up, and masterminded the actual killing." Antone v. State, 410 So.2d at 161. That another individual was the one who "originated the idea" that Cloud should be killed does not change the fact that Antone planned how the killing should be accomplished. This aspect of Bruns' potential testimony was merely cumulative of other testimony previously presented by the state and there is no likelihood that it "might have affected the outcome of the [sentence]." United States v. Agurs, 427 U.S. at 104, 96 S.Ct. at 2398.
 
 
 54
 Therefore, for reasons different from those of the majority, I concur in the denial of habeas relief on the Brady issue.
 
 
 55
 I note further, however, that I perceive a fundamental misapplication of the dictates of 28 U.S.C. Sec. 2254(d) and Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).
 
 
 56
 The majority states "the district court found that petitioner could not overcome the presumption of correctness set forth in 28 U.S.C. Section 2254(d)" and that, because the state court found there was no suppression of evidence by the prosecution, "[t]his finding concludes the issue under 28 U.S.C. Sec. 2254(d) and Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981)." (emphasis added).
 
 
 57
 Section 2254(d) and the "presumption of correctness," Sumner v. Mata, 449 U.S. at 549, 101 S.Ct. at 770, set the standard of proof by which a habeas petitioner must establish the facts of the case. Where, as here, the state has made a factual determination which is refuted by the petitioner, the habeas petitioner must overcome the presumption of correctness afforded the state's factual finding and must establish the contrary fact by convincing evidence, 28 U.S.C. Sec. 2254(d), unless one or more of the eight conditions set forth in 28 U.S.C. Sec. 2254(d)(1)-(8) applies.[10] If one of the eight conditions applies, the petitioner still has the burden of proving his version of the facts by a preponderance of the evidence. Sumner v. Mata, 449 U.S. at 551, 101 S.Ct. at 771. However, nothing in Sec. 2254(d) as properly applied "concludes" review of legal or factual issues presented for federal habeas review. Section 2254(d) simply establishes the varying degrees of deference state factual findings are to be afforded and, thus, establishes a habeas petitioner's burden of proof as to factual issues. Even where the presumption applies the contrary fact may be proved by the habeas petitioner; it simply must be proved by convincing evidence. See Goode v. Wainwright, 704 F.2d 593, 605 & n. 14 (11th Cir.1983).
 
 
 58
 In my opinion, the majority erred (1) in not giving reasons why the hearing was full and fair and why the record supports the finding at issue; (2) in not evaluating whether petitioner established by convincing evidence that the government did suppress evidence favorable to the government. Because, however, under correct Brady analysis the factual finding made by the state court on which the district court and the majority rely is not relevant, I do not address these issues.
 
 INEFFECTIVE ASSISTANCE OF COUNSEL
 
 59
 (Majority's Issue IV)
 
 
 60
 Relying on its view that the "district court carefully considered petitioner's claims of ineffective assistance," Maj. Op. at 1540, the majority summarily affirmed denial of habeas relief, giving no reasons for denial of appellant's non-frivolous claims. Although the district court no doubt gave careful consideration to the issue, the analysis at least as to one major aspect of the claim is flawed and the legal standard applied was never identified; hence more thorough consideration is warranted.
 
 
 61
 Appellant claims that the state evidentiary hearing was not full and fair and therefore an evidentiary hearing was required on this issue in the federal district court. Normally, if the state has not held an evidentiary hearing or if the facts necessary to resolution of the issue raised on habeas were not adequately developed in the state proceedings, a federal habeas court has a duty to conduct an evidentiary hearing. Burden v. State, 584 F.2d 100, 102 (5th Cir.1978); Scott v. Estelle, 567 F.2d 632 (5th Cir.1978). See also Guice v. Fortenberry, 661 F.2d 496, 500 (5th Cir.1981) (en banc); Jordan v. Estelle, 594 F.2d 144, 146 (5th Cir.1979). Cf. Thomas v. Zant, 697 F.2d 977 (11th Cir.1983) (where state has held evidentiary hearing but material facts are not adequately developed, absent deliberate bypass by the petitioner, federal habeas court must hold an evidentiary hearing). An exception to this general rule is found, however, where the facts alleged by the petitioner, even if proved, would not entitle him to relief. Guice v. Fortenberry, 661 F.2d at 503; Easter v. Estelle, 609 F.2d 756 (5th Cir.1980); Cronnon v. Alabama, 587 F.2d 246 (5th Cir.), cert. denied, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1978). Another exception exists where "the record before the district court was sufficient for a proper examination of [petitioner's] claims." Winfrey v. Maggio, 664 F.2d 550, 552 (5th Cir.1981). See also Schultz v. Wainwright, 701 F.2d 900 at 901 (11th Cir.1983) (evidentiary hearing not required where the district court can determine merits of claim based on existing record).
 
 
 62
 Here, most of the factual issues appellant raises in his claim of ineffective assistance can be resolved by reference to the existing record; presentation of the evidence appellant seeks to proffer would not alter those resolutions. As to those factual disputes that cannot be resolved by reference to the existing record, even if we assume them proved, appellant would not prevail on the ineffective assistance issue.
 
 
 63
 Thus, even assuming the state hearing was not full and fair, because the following analysis of the merits would not be altered even if appellant were afforded an evidentiary hearing in federal court, no such hearing was required.
 
 
 64
 Appellant presents three elements to his claim.[11] First, he asserts that counsel was ineffective by virtue of the failure to move for a change of venue in light of prejudicial pretrial publicity. Even if we assume, however, that this did constitute ineffectiveness, it is clear that no prejudice resulted from this failure. Washington v. Strickland, 693 F.2d 1243, 1258 (5th Cir. Unit B 1982) (en banc), cert. granted, --- U.S. ---, 1038 S.Ct. 2451, 77 L.Ed.2d 1332 (1983). A review of the actual voir dire proceedings shows that the venire persons and ultimate jurors adequately were voir dired, even if not by defense counsel, about the effect of pretrial publicity and revealed no basis for a finding that they were prejudiced by such publicity.
 
 
 65
 In Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), the Supreme Court enunciated the test for whether individual jurors are sufficiently impartial to sit in judgment on the defendant.
 
 
 66
 In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process.... It is not required, however, that the jurors be totally ignorant of the facts and issues involved.... To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of the prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.
 
 
 67
 Id. at 722-23, 81 S.Ct. at 1642-43 (citations omitted). The record of the voir dire shows that each and every juror who indicated that s/he had read or heard about the circumstances of Antone's arrest and indictment were questioned by the prosecutor and/or the defense counsel concerning their ability to render an impartial verdict. These venirepersons each indicated an ability to be impartial and the absence of any preconceived opinion as to guilt. Against this background, responses to additional questions by defense counsel may have been enlightening but the failure to propound such questions does not indicate ineffective assistance.
 
 
 68
 Appellant next complains that counsel failed to object when prospective jurors were excused for cause because of their convictions about the death penalty, allegedly in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
 
 
 69
 My review of the record indicates that each dismissal fully was justified under the standards of Witherspoon v. Illinois; therefore no objections to the dismissals of the jurors in question could have been successful.
 
 
 70
 Persons conscientiously opposed to the death penalty may be excused for cause only where their opposition is such that "(1) [ ] they would automatically vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before them, or (2) that their attitude toward the death penalty would prevent them from making an impartial decision as to the defendant's guilt." Id. at 522 n. 21, 88 S.Ct. at 1777 n. 21 (emphasis in original). All the jurors excused for cause because of their views on the death penalty indicated "unambiguously," id. at 515 n. 9, 88 S.Ct. at 1774 n. 9, that their decisions as to guilt would be affected by their views on the death penalty. Thus, there was no Witherspoon basis for objections to their dismissal and failure to object does not indicate ineffectiveness. Cf. Goodwin v. Balkcom, 684 F.2d 794, 816 (11th Cir.1982) (failure to object to erroneous Witherspoon dismissals and to propound more questions to venirepersons evidences ineffectiveness).
 
 
 71
 The third aspect of the ineffective assistance claim is trial counsel's failure at the penalty phase to introduce evidence of nonstatutory mitigating factors, request an instruction that nonstatutory mitigating factors could be considered and object to the prosecutor's misleading statements to the jury as to how aggravating and mitigating factors were to be analyzed. Appellant argues that but for this ineffectiveness, mitigating evidence would have been introduced in the form of: (1) the disparity of sentences which would result if appellant were given the death penalty when no co-defendants received the death penalty, (2) the fact that appellant had undergone brain surgery, and (3) testimony of family members and friends as to appellant's character.
 
 
 72
 Under the standards set forth in Washington v. Strickland, 693 F.2d 1243 (5th Cir. Unit B 1982) (en banc), cert. granted, --- U.S. ---, 1038 S.Ct. 2451, 77 L.Ed.2d 1332 (1983), the failure of counsel to introduce the above evidence would, in my view, come close to ineffectiveness. However, even if ineffectiveness is assumed, the record shows the absence of any "actual and substantial disadvantage to the course of his defense." Id. at 1262.
 
 
 73
 The record reveals and the majority points out in its discussion of the Lockett claim, that defense counsel argued to the jury that a co-defendant bargained for a thirty-five-year sentence. Under this court's analysis in Ford v. Strickland, 696 F.2d at 812, we now assume that arguments to the jury in the penalty phase will be considered by the jury as mitigating evidence even though the jury was never instructed that they could consider the underlying evidence on which those arguments are based. Thus, the evidence as to sentencing disparity was before the jury and appellant cannot claim to be prejudiced by virtue of the failure to introduce more evidence on the same point.
 
 
 74
 No evidence relative to appellant's brain surgery was proffered, and nowhere in the post-conviction proceedings has appellant alleged specifically what impact this surgery had on his behavior or why this surgery should mitigate his guilt or eligibility for the death penalty. None of appellant's family or friends were called to testify in his behalf but again appellant does not suggest what testimony these persons could have given that would have been mitigating. Thus, even assuming ineffectiveness, appellant has failed to demonstrate how this ineffectiveness disadvantaged him at the penalty phase. Accordingly, the burden of proving "actual and substantial disadvantage," id., cannot be met.
 
 
 75
 For the foregoing reasons, I concur in the judgment that habeas relief is not warranted on the ineffective assistance claim and, in general, in the judgment but not the opinion of the majority.
 
 
 
 *
 Honorable George C. Young, U.S. District Court Judge for the Middle District of Florida, sitting by designation
 
 
 [1]
 The Brady issue considered by the state court concerned the payment of attorneys' fees for a co-defendant and is not the Brady issue raised by the petition for habeas corpus
 
 
 [2]
 We have been holding this matter in abeyance pending this court's en banc resolution of Ford v. Strickland, 696 F.2d 804 (11th Cir.1983) (en banc)
 
 
 [3]
 The seven mitigating factors as read by the state trial judge to the jury were: 1) that the defendant has no significant history of prior criminal activity; 2) that the crime for which the defendant is to be sentenced was committed while the defendant was under the influence of extreme mental or emotional disturbance; 3) that the victim was a participant in the defendant's conduct or consented to the act; 4) that the defendant was an accomplice in the offense for which he is to be sentenced but the offense was committed by another person and the defendant's participation was relatively minor; 5) that the defendant acted under extreme duress or under the substantial domination of another person; 6) the capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired; and 7) the age of the defendant at the time of the crime
 
 
 [4]
 Paragraph 13 of the Motion to Dismiss the Indictment filed by Antone's counsel states as grounds for a dismissal of the indictment that: "by limiting the circumstances in mitigation as delineated in F.S. Section 921.141, the Statute provides for cruel and/or unusual punishment in violation of the Eighth and Fourteenth Amendment ...."
 
 
 [5]
 In her concurring opinion, Judge Kravitch objects to the citation of Henderson v. Kibbe, and would apparently rely solely on Lockett. However, Antone has argued this issue in the nature of a two prong attack and we have attempted to review it as such. We are aware of no Supreme Court authority indicating to the contrary
 
 
 [6]
 Counsel, however, did mention an injury to Mr. Antone's head and suggested that the jury read about the injury as described in Mr. Antone's prison record, introduced into evidence during the penalty phase of the trial. Counsel stated, "I think his health is a matter of record in there and it is a factor to be considered by you in considering the mitigating factor of age."
 
 
 [7]
 In fact, two of the seven mitigating factors specifically refer to mental qualities
 
 
 [8]
 As related by the petitioner, Benjamin Gilford, the confessed triggerman committed suicide while awaiting sentencing. Vic Acosta, the man who communicated the contracts to Antone, died in jail. E. Marlow Haskew, the driver of the car, testified against Antone at trial and plea bargained for a sentence of not more than 35 years
 
 
 [9]
 Payton v. New York was decided on April 15, 1980. The petitioner's conviction and sentence was affirmed by the Florida Supreme Court on March 27, 1980, rehearing denied on May 21, 1980. The petitioner did not raise the Payton issue on direct appeal
 
 
 [1]
 Petitioner-appellant argues that the cause and prejudice standard of Sykes should not be applied to procedural default arising in the context of death penalty cases where the price of a procedural default, precluding review, may be a human life. He argues this is especially true where the default arises in relation to an unforeseen development in the law, e.g., Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). To support this argument, he relies on the language of the Supreme Court in Engle v. Isaac, 456 U.S. at 135, 102 S.Ct. at 1575, 71 L.Ed.2d at 805: "The terms 'cause' and 'actual prejudice' are not rigid concepts; they take their meaning from the principles of comity and finality ... In appropriate cases those principles must yield to the imperative of a fundamentally unjust incarceration." Given that the majority fails to discuss this issue, I note only that the court's analysis in Ford v. Strickland, 696 F.2d 804 (11th Cir.1983), sub silentio answers appellant's argument. There the court applied the cause and prejudice standard to preclude review of the merits of a similar Lockett claim
 
 
 [2]
 In acknowledging my objection to use of the Henderson v. Kibbe standard, the majority states:
 In her concurring opinion, Judge Kravitch objects to the citation of Henderson v. Kibbe and would apparently rely solely on Lockett. However, Antone has argued this issue in the nature of a two prong attack and we have attempted to review it as such. We are aware of no Supreme Court authority indicating to the contrary.
 Maj. Op. at note 5. It is not clear to which "two prongs" the majority refers, the issues of "cause" and "prejudice" or the issues of "prejudice" and the "merits" of the Lockett claim. Assuming the former, although I believe reference to Lockett must be made in determining how both "cause" and "prejudice" are defined in the context of a Lockett claim, the two issues are and should be treated as two separate prongs. See text supra, at 1537. The fact that the same case affects the analysis of two separate issues, however, makes those two issues no less distinct. If the majority refers to the distinction between analysis of "prejudice" and the merits of a Lockett claim, as indicated in note 4 supra, I believe these are to be treated separately. One issue goes to whether, assuming the alleged error occurred, it is of sufficient constitutional magnitude to justify our reaching the merits despite procedural default; the other, the merits, involves a determination of whether the error occurred, i.e., was the instruction erroneous. Again, however, the fact that reference to Lockett is relevant to both issues does not mean the issues are indistinct. Finally, it is not the mere "citation" to Henderson v. Kibbe to which I object but the failure to distinguish between an eighth amendment and a fourteenth amendment claim.
 
 
 [3]
 Relying on Ford v. Strickland, the majority here ruled: "There was nothing in the jury instructions that precluded the jury from considering this fact [disparity of appellant's and codefendant's sentences] ... [and] the jury would not have been precluded from considering [appellant's brain surgery] by the court's instructions." Majority Opinion at 1538 (footnotes omitted). This is a resolution of the merits of appellant's Lockett claim, rather than resolution of the prerequisite, procedural issue of whether there was actual prejudice from the alleged constitutional violation. Compare Ford v. Strickland, 696 F.2d, at 812-813, with id. at 858-59 (Kravitch, J. dissenting)
 In United States v. Frady, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) the Supreme Court enunciated the standards and appropriate approach to analysis of prejudice in the cause and prejudice test. The constitutional violation there alleged was that the jury that convicted Frady was erroneously instructed on the element of malice, leading to a conviction of first degree murder rather than manslaughter. Frady had failed contemporaneously to object to the instructions as given and, thus, only if the cause and prejudice standard of Sykes were met could the federal habeas court reach the merits of his claim. In determining that Frady failed to establish actual prejudice from his failure to object, the Court did not delve into an analysis of whether or not the jury instruction was erroneous but proceeded on the assumption that the instruction was in error. No prejudice was found because there was strong evidence of malice in the record, Frady never contended that he acted without malice, and the findings that were required to convict under the instruction that was given were incompatible with a finding of the lesser charge of manslaughter. The Court therefore found that the federal habeas court was precluded from reaching the merits of Frady's claim that the instruction given was erroneous as to malice. Id. at 174-75, 102 S.Ct. at 1597-98, 71 L.Ed.2d at 834.
 I am troubled by the developing pattern of addressing the merits of habeas claims while purporting to resolve and considering arguments and authority only relevant to the "prejudice" issue. I am concerned that in future cases litigants and the court will apply these discussions as precedent for resolution of the merits of Lockett claims raised on habeas.
 
 
 [4]
 Although appellant alleges the instructions given precluded consideration of his prior brain surgery, no evidence relevant to this issue was proffered
 
 
 [5]
 The prosecutor's knowledge of the exculpatory nature of the evidence is relevant in only one situation identified infra at note 7
 
 
 [6]
 Under the standards of Lockett v. Ohio, applicable today, the information surely was material to Brady's sentence
 
 
 [7]
 It is only in this situation where the prosecutor's knowledge of the exculpatory nature of the material is relevant. United States v. Agurs, 98 S.Ct. at 2399 (where information obviously is exculpatory prosecutor must reveal even though no request has been made)
 
 
 [8]
 The exculpatory nature and materiality of the evidence must be judged in retrospect because the issue is not the prosecutor's culpability but the fairness of the trial. United States v. Agurs, 96 S.Ct. at 2400-01
 
 
 [9]
 I would hold therefore that the state court finding to the contrary, Antone v. State, 410 So.2d at 160, is an error of law
 
 
 [10]
 Section 2254(d) reads as follows:
 (d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit--
 (1) that the merits of the factual dispute were not resolved in the State court hearing;
 (2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
 (3) that the material facts were not adequately developed at the State court hearing;
 (4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
 (5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
 (6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
 (7) that the applicant was otherwise denied due process of law in the State court proceeding;
 (8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record:
 And in an evidentiary hearing in the proceeding in the Federal court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the applicant, otherwise appears, or is admitted by the respondent, or unless the court concludes pursuant to the provisions of paragraph numbered (8) that the record in the State court proceeding, considered as a whole, does not fairly support such factual determination, the burden shall rest upon the applicant to establish by convincing evidence that the factual determination by the State court was erroneous.
 
 
 [11]
 Appellant abandoned his claims that appellate counsel was ineffective