410 So.2d 157 (1982)
Anthony ANTONE, Petitioner/Appellant,
v.
STATE of Florida, Respondent/Appellee.
Nos. 61594, 61621 and 61622.
Supreme Court of Florida.
January 28, 1982.
*158 Thomas D. McCoun, III of Louderback & McCoun, St. Petersburg, for petitioner/appellant.
Jim Smith, Atty. Gen., George R. Georgieff, Asst. Deputy Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for respondent/appellee.
PER CURIAM.
We have for our consideration a motion for stay of execution, a petition for writ of error coram nobis asking the Court to grant a new trial on grounds of newly discovered evidence, and an expedited appeal from a denial of two motions for post-conviction relief under Florida Rule of Criminal Procedure 3.850. The factual bases for the coram nobis petition are also included in the grounds of one of the motions for 3.850 relief. This Court originally affirmed the conviction and sentence of death in our decision reported as Antone v. State, 382 So.2d 1205 (Fla.), cert. denied, 449 U.S. 913, 101 S.Ct. 287, 66 L.Ed.2d 141 (1980). A detailed statement of the facts of this case is contained in that opinion. For the reasons *159 expressed, we deny the relief requested and deny the motion for stay of execution.
In this consolidated proceeding, appellant seeks relief claiming (1) newly discovered evidence which assertedly is exculpatory and was withheld by the state in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); (2) the exclusion of certain prospective jurors contrary to the principles of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); (3) the warrantless arrest of appellant Antone in his home in violation of the principles announced in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980); (4) multiple errors in the original trial; (5) ineffective assistance of counsel; and, (6) the failure of the trial court in the penalty phase to properly instruct the jury concerning the mitigating circumstances it could consider in making its recommendation to the trial judge. The trial court denied relief on the 3.850 motions after a full evidentiary hearing. In that proceeding, counsel for both parties agreed that the trial judge had no jurisdiction of the coram nobis application, that jurisdiction being solely in the Supreme Court of Florida.
The trial court, in denying relief on the issue of newly discovered evidence and on the assertion that the state improperly withheld exculpatory evidence, made the following factual findings:
This Motion was predicated on the testimony of one Robert Bruns. It can be said that Mr. Bruns was the witness that "cracked" the murder of Detective Cloud. One Benjamin Gilford began associating and, for a time, living with Mr. Bruns in Bradenton, Florida. He told Mr. Bruns that he was the person who had actually committed the Cloud murder and that this was but one of a series of murders that he had been hired to commit. It appears that sometime in February of 1976 Mr. Bruns was arrested on a traffic offense. During this incarceration, he made contact with law enforcement officers and reported to them what Gilford had told him. Bruns was asked to assist the F.B.I. and State officials in obtaining more information pertaining to the Cloud murder. To this end he agreed to have electronic monitoring devices placed on his person, home and van. This was done for some three days beginning February 21, 1976. Subsequently, Gilford was arrested and charged with the murder. Thereafter, Ellis Marlow Haskew and Anthony Antone were arrested.
The difficulty began, it appears, after the Governor signed Antone's death warrant. Bruns contacted Attorney Ferlita and in a deposition told Messrs. Ferlita and Nutter that Gilford had told him that while Antone did provide the money after the murder that Antone did not know anything about the Cloud murder until after it had occurred; that when he learned why Victor Acosta had given him this money he became upset and hesitated in making the payment. This deposition was attached as an Exhibit to the Motion filed by Messrs. Ferlita and Nutter wherein they contended that the State had withheld exculpatory evidence from the defense and had violated Rule 3.220(a)(1)(i) in not listing Bruns as a witness pursuant to a defense demand for discovery.
Numerous witnesses testified before me at this hearing, among them Bruns, E.D. Williams of the Tampa Police Department, David Malarney and Jim Blatley of the F.B.I. and Aaron Bowden, the Attorney who prosecuted the case in behalf of the State of Florida.
While continuing to insist that Gilford had told him that Antone did not know anything about the Cloud murder until after it occurred, Bruns readily admitted that he never told any law enforcement official, either State or Federal, of this fact. His testimony was that since his conversations with Gilford were monitored and recorded they must have heard it. Prior to the hearing, copies of the tape recordings were delivered to Messrs. Ferlita and Nutter. From the testimony *160 and representations made to this court it is manifest that the recordings were inaudible. None of the witnesses who testified that they participated in the monitoring of the conversations between Gilford and Bruns could testify that they heard any such conversations primarily because the conversations were difficult to hear while they were monitoring.
Furthermore, Bruns testified that prior to his being equipped with those monitoring devices, he talked with Agent David Malarney of the F.B.I. on February 20, 1976. Agent Malarney testified that on that date and time Bruns told him that Gilford had related to him that Haskew and Gilford were hired to do the shooting by an individual known to Gilford as "Anthony" and that "Anthony" had supplied the murder weapon. While Gilford did not know who Anthony was, he did have his telephone number. Agent Malarney testified that when Gilford was arrested he had on his person a telephone number to an "Anthony" which turned out to be Anthony Antone.
E.D. Williams of the Tampa Police Department also testified that in a conversation with Bruns, Bruns related that Gilford had told him that the murder had been set up by one "Anthony."
Aaron Bowden, the Attorney who prosecuted the case for the State of Florida, admitted that Bruns' name was not placed on any witness list, but stated that there was no malicious purpose behind this. His reasoning was first, that Bruns' testimony while incriminating Antone was inadmissible because rank hearsay; and, second, because he was not aware of any exculpatory or favorable evidence to Antone that Bruns could provide. Bruns' name was apparently listed as a witness in the case against Benjamin Gilford because his deposition was taken on June 2, 1976 by Mr. Richard C. Edwards, Assistant Public Defender, representing Gilford.
Upon these facts, the trial judge ruled as follows:
1. That prior to the trial of Anthony Antone and until such time as Robert Bruns made the above described disclosures to Messrs. Ferlita and Nutter, no State or Federal official was aware of any possible exculpatory or favorable evidence that Mr. Bruns could provide in behalf of the defendant, Anthony Antone; thus neither the precepts of Brady v. Maryland, 373 U.S. 831, 83 S.Ct. 1194, 10 L.Ed.2d 215 nor any of its progeny were violated. Furthermore, I find, in view of the questionable admissibility of Bruns' testimony and in view of the overwhelming evidence produced at defendant's trial, that even if there had been, which there was not, a specific request for this evidence there is no reasonable likelihood that it could have affected the outcome of the trial or sentence. See United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
2. That while there was a technical violation of Florida Rule of Criminal Procedure 3.220(a)(1)(i), the violation was not wilfull or malicious and the defendant Antone was not harmed nor prejudiced by this violation. Bruns was not used as a witness by the State. The admissibility of his alleged exculpatory testimony is highly questionable and even if it would have been admissible it is patently unbelievable in view of all of the facts surrounding this case. Consequently, as with the alleged "Brady" violation, I find that even if his name had been furnished to the defense under the rules of discovery, there is no likelihood it could have affected the outcome of the trial or sentence.
The trial judge further determined that counsel was reasonably effective, finding:
1. That Anthony Antone was represented by reasonably competent and effective counsel and did in fact receive in preparation of, and during the course of his trial, effective assistance of counsel. In making this finding, I am cognizant that his was a capital case and am considering this fact in my overall determination of this finding. Washington v. Watkins, 655 F.2d 1346 (5th Cir.1981).

*161 2. That his counsel did not render ineffective assistance by virtue of not having requested a change of venue inasmuch as this was a considered decision between attorney and client, Catches v. United States, 582 F.2d 453 (8th Cir.1978), Reynolds v. Mabry, 574 F.2d 978 (8th Cir.1978); nor do I find from the evidence presented or a review of the record that counsel was ineffective with respect to Witherspoon. My perusal of the record discloses that each and every juror that was excused for cause was justifiably excused.
The trial judge concluded by rejecting the contention that the recent United States Supreme Court decision in Payton v. New York, decided four years after Antone's trial, required a reversal for a new trial and by finding that the other contentions were not proper for collateral relief since they dealt with issues which could have been raised on the initial appeal before this Court.
We are in total accord with the findings of the trial judge and commend him for the manner in which he detailed his reasons in his order. Because of the nature of this proceeding, we deem it appropriate to fully discuss the principal issue argued concerning the asserted newly discovered evidence which the witness Robert Bruns brought to the attention of the attorneys for appellant Antone, and the resulting assertion that the failure of the state to disclose Robert Bruns as a witness was a fatal error under Brady and our rules of criminal procedure requiring a reversal and a new trial.
The testimony of the newly discovered witness, Bruns, is accurately reflected in the trial court's findings. It is clear that Bruns never told any law enforcement official, either state or federal, that Gilford told him that Antone only participated in the murder after the fact and that Antone's only involvement was reluctantly paying the money after Cloud was killed. These conversations allegedly occurred on or about February 20, 1976, and Bruns testified by deposition in Gilford's proceeding. Gilford pleaded guilty in June of 1976, and, one month later, committed suicide. Appellant's trial commenced on August 23, 1976.
It was clearly established in three separate parts of the testimony of Haskew, the state's primary witness in Antone's original trial, that Victor Acosta was the moneyman who wanted the victim, Detective Cloud, killed. First, Haskew testified that Antone had told him that Victor Acosta wanted five people killed when he asked Haskew to come to Tampa. Next, Haskew testified that Antone had called Haskew to his house and asked him to try out a .32 automatic with a silencer that Acosta had furnished Antone. And, finally, Haskew testified that ten days prior to the murder Antone had told him that Acosta was insistent that Cloud be killed because he was afraid that Cloud was going to be reinstated as a police officer.
The original trial testimony establishes that Antone hired Gilford and Haskew to kill Detective Cloud, directed them to Cloud's residence, furnished them with a pistol with a silencer which was packed with fiber from an air-conditioning filter found at Antone's home, and that Antone had this weapon tested in his home by having it fired into a couch in his den. These facts, established by Haskew's testimony, were corroborated by the presence of a bullet in the couch which matched the bullet that killed Detective Cloud and by the discovery in Antone's shed of blue air-conditioner filter fiber which matched that used in the silencer. Bruns' testimony that Antone was the middleman was not new evidence; that fact had been established during the course of the original trial testimony. Antone was a middleman who organized, set up, and masterminded the actual killing.
The claim that Gilford told Bruns that Antone didn't know about the killing until after it occurred was not known by the enforcement or prosecutorial officials. Further, it was not even asserted as a defense in the trial or penalty phase that Antone was only a participant after the fact. An examination of the entire record in this case, particularly an examination of *162 appellant's own testimony, reflects that this was not the theory of the defense. Appellant Antone not only denied having "anything to do with the Richard Cloud killing," but also, in his direct testimony, responded to the question, "... did you ever meet or know a man by the name of Buck Gilford?", by answering, "No, I've never met him." In effect, what appellant Antone is attempting to do in this proceeding is to offer, through the testimony of Bruns, the statement of Gilford to impeach his own testimony and to change totally his theory of defense.
In addition, Gilford, whose statement was simply repeated by Bruns, committed suicide prior to this trial and, consequently, the admissibility of Bruns' testimony under these circumstances is questionable. Assuming that it would have been admissible in either the trial or penalty phase, given the totality of the evidence in the original case, we find that this newly discovered evidence still does not meet the test of coram nobis which requires "that the alleged facts must be of such a vital nature that had they been known to the trial court, they conclusively would have prevented the entry of the judgment." Hallman v. State, 371 So.2d 482, 485 (Fla. 1979).
Next, with reference to the asserted failure of the state to advise Antone of this allegedly exculpatory evidence, we fully agree with the finding of the trial judge that the state did not have knowledge of Gilford's statement to Bruns regarding Antone's ignorance of Cloud's murder until after it occurred and his after-the-fact participation in paying the money. The ruling of the trial judge is supported by the evidence, and we find there was no actual suppression of favorable evidence by the state. The law is clear that in the absence of actual suppression of favorable evidence, the prosecution does not violate due process by denying discovery. Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
The next issue raised concerns a violation of our criminal rules of discovery. We recognize that under Florida Rule of Criminal Procedure 3.220, the prosecutor is required to disclose to defense counsel the names and addresses of all persons known to the prosecutor to have "information which may be relevant to the offense charged, and to any defense with respect thereto." Our rule of discovery is a procedural rule which requires reciprocal action by the defendant as well as the prosecution, and it has been approved by the United States Supreme Court. Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970). The purpose of this procedural discovery rule is to make our criminal justice system more efficient by avoiding multiple adversary pretrial evidentiary hearings previously used by defendants to obtain discovery information.
The issue on this point is whether the failure to disclose the name of the witness Bruns was so prejudicial that it requires a vacation of the judgment and sentence. Although the trial judge found that Bruns' name should have been made known to the defense under our procedural rule, we find that the appellant was not prejudiced in his defense by the lack of this information. We note that the person making the statement was dead at the time of the trial and that Antone denied at the trial ever having known him. Under the circumstances of this case, we find neither a constitutional violation of the Brady doctrine nor prejudice to appellant by the procedural violation of our discovery rules.
The claim by appellant that the prosecution excluded all jurors with death penalty scruples by using both its peremptory challenges and its challenges for cause, thus circumventing the principle established in Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), is without merit. Dobbert v. State, 409 So.2d 1053, (Fla. 1982). Any issue concerning this specific jury selection could have been raised in Antone's first appeal to this Court, and this is not a matter that will support a collateral attack. Spenkelink v. State, 350 So.2d 85 (Fla.), cert. denied, 434 U.S. 960, 98 S.Ct. *163 492, 54 L.Ed.2d 320 (1977); Sullivan v. State, 372 So.2d 938 (Fla. 1979).
Appellant further contends that the judgment and sentence are unconstitutional because Antone was arrested without a warrant in his residence, contrary to the decision of the United States Supreme Court in Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Appellant argues that, even though Payton was decided four years after appellant's conviction and sentence, the law announced in that case should be given retroactive application. First, it should be noted that Payton is distinguishable from the instant case. In Payton, the officers acted without a warrant and, after breaking into Payton's home looking for him, saw and seized inculpatory evidence that appeared in plain view. Payton was not even present at the time. In the instant case, although Antone was arrested without a warrant in his own home, nothing was seized at the time of his arrest. The seizure of items within the premises was accomplished under a search warrant based almost entirely on information acquired prior to Antone's arrest. Further, we believe that our decision in Witt v. State, 387 So.2d 922 (1980), controls and that Payton is not a "change of law" which requires retroactive application.
The multiple asserted errors made by the trial court in the original proceeding are matters that could have been raised in the first appeal to this Court and do not support a collateral attack. Spenkelink; Sullivan. We also reject the claims of ineffective assistance of trial and appellate counsel. For the purposes of this proceeding, we treat the issue of ineffective assistance of appellate counsel as a petition for writ of habeas corpus. After another careful review of the record, we find that there was no substantial deficiency of counsel in either the trial or appellate portion of this cause. Under the test we enunciated in Knight v. State, 394 So.2d 997 (1981), this appellant was provided reasonably effective assistance of counsel in all stages of this proceeding.
Finally, appellant asserts that the trial court limited jury consideration of mitigating factors to those set forth in the statute. From our review of the record, no limitation was placed on appellant at the time of the original trial, and no showing has been made that he was denied an opportunity to present to the jury any mitigating evidence. The appellant did not request that any additional mitigating factors be included in the instructions, and the standard jury instruction in force at the time of trial was presented without objection. That instruction did not expressly limit the mitigating factors to those identified in the statute. Again, this was an issue that could have been raised in appellant's first appeal to this Court and is not a matter which may support collateral attack. Spenkelink; Sullivan.
The petition for writ of coram nobis is denied, and the order of the trial court denying appellant Antone's motions for 3.850 relief is affirmed. We also deny the claim of ineffective appellate counsel, which we treat as habeas corpus. Finally, the motion for stay of execution is denied. No motions for rehearing will be entertained.
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, OVERTON, ALDERMAN, McDONALD and EHRLICH, JJ., concur.