443 So.2d 973 (1983)
Larry CLARK, Appellant,
v.
STATE of Florida, Appellee.
No. 62126.
Supreme Court of Florida.
December 22, 1983.
Rehearing Denied February 7, 1984.
*975 Simson Unterberger of Kessler & Unterberger, Tampa, for appellant.
Jim Smith, Atty. Gen., and Robert J. Landry, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Larry Clark appeals his conviction of first-degree murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution. We affirm both the conviction and sentence.
Following indictment by a Hillsborough County grand jury for first-degree murder, attempted first-degree murder, and armed robbery, a jury convicted Clark of all three counts and, by a vote of eight to four, recommended the death sentence. The trial court followed the jury's advisory verdict by imposing a sentence of death.
The crimes occurred on the afternoon of October 30, 1981 in Tampa. Two men entered a sign shop owned by the victims, Felix and Dorothy Satey, husband and wife. One of the men, subsequently identified by Mr. Satey as Clark, had a gun. After shooting Mr. Satey twice and robbing him, Clark and his companion entered the residential portion of the premises and found the seventy-four-year-old Mrs. Satey who was confined by a physical disability to a castored typist's chair. Mr. Satey pleaded that his wife not be harmed, then heard a gunshot followed by his wife's moaning. When found, Mrs. Satey had a gunshot wound over the right eye, from which she subsequently died.
The first asserted error relating to the conviction is the admission, over defense counsel's objection, of certain testimony of Richard E. Casey, a handwriting expert. Mr. Casey's qualifications as an expert in the field of questioned documents was not contested. The testimony to which Clark's counsel objected concerned the taking of handwriting exemplars from Davidson Joel James, Clark's co-defendant, whose trial was severed from that of Clark. Mr. Casey testified that the unusual length of time James took to complete the exemplars *976 was evidence that James, "through apprehension or other reasons," was trying to vary his handwriting from that which he used in everyday writing. Defense counsel objected, contending that this testimony allowed an inference that James was trying to hide something. Such an inference could then have a "spill-over" effect on Clark. Clark argues here, as at trial, that Casey was not qualified to speculate on the reasons an individual's handwriting might vary from one time to another. The trial court's determination that Casey was qualified by experience and training to make such an assessment is fully supported by the record. Further, defense counsel negated any alleged spill-over effect on cross-examining Casey by establishing that Clark, unlike James, completed his handwriting exemplars very quickly. Casey's testimony was properly admitted.
The second claimed error concerns the denial of a motion for mistrial when, during its deliberations, the jury requested that it be allowed to look at a windbreaker, allegedly belonging to the co-defendant James. The jacket had been excluded from evidence because it had not been exhibited to defense counsel prior to trial. Although the trial court denied the motion for mistrial, it acceded to the defense request that the jury be instructed that its members not concern themselves with the jacket because it had not been admitted into evidence. The court further instructed the jury that it should not draw any inferences from anything said about the jacket, nor should it speculate as to why the jacket was not in evidence. Clark speculates that the excluded jacket must have assumed a particular significance in the minds of the jury. Whatever prejudice may have been caused Clark by the jurors' interest in the jacket was cured by the trial court's response to their request to view it. In any event the jury's request does not demonstrate the sort of prejudicial impact which would make a mistrial an absolute necessity. See Ferguson v. State, 417 So.2d 639, 641 (Fla. 1982); Salvatore v. State, 366 So.2d 745, 750 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979).
Having found no merit to Clark's arguments relating to the validity of his conviction, and further finding the conviction to be supported by substantial competent evidence, we turn to consideration of the sentence imposed on Clark. Against no statutory mitigating circumstances, the trial court found the following five aggravating circumstances:
1. The defendant had been previously convicted of a felony involving the use or threat of violence to the person. § 921.141(5)(b), Fla. Stat.
2. The capital felony was committed while the defendant was engaged, or was an accomplice, in the commission of a burglary and a robbery. § 921.141(5)(d), Fla. Stat.
3. The capital felony was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody. § 921.141(5)(e), Fla. Stat.
4. The capital felony was especially heinous, atrocious, or cruel. § 921.141(5)(h), Fla. Stat.
5. The capital felony was a homicide committed by the defendant in a cold, calculated, and premeditated manner without pretense of moral or legal justification. § 921.141(5)(i), Fla. Stat.
Clark specifically challenges the sufficiency of the evidence in support of the third and fourth of these aggravating circumstances.
The burden is upon the state in the sentencing portion of a capital felony trial to prove every aggravating circumstance beyond a reasonable doubt. Williams v. State, 386 So.2d 538 (Fla. 1980). Not even "logical inferences" drawn by the trial court will suffice to support a finding of a particular aggravating circumstance when the state's burden has not been met. In regard to the third circumstance listed above, in order for a witness-elimination motive to support finding the avoidance of arrest circumstance when the victim is not *977 a law enforcement officer, "[p]roof of the requisite intent to avoid arrest and detection must be very strong." Riley v. State, 366 So.2d 19, 22 (Fla. 1978). We have also said that an intent to avoid arrest is not present, at least when the victim is not a law enforcement officer, unless it is clearly shown that the dominant or only motive for murder was the elimination of witnesses. Menendez v. State, 368 So.2d 1278 (Fla. 1979).
Here the proof of such a dominant or exclusive motive for the killing of Dorothy Satey was established. Clark made a statement to a cellmate that "one of them could identify him." Mrs. Satey knew Clark from his past employment and had signed past paychecks to him. She knew, or would soon know, that he had just committed a violent felony on her husband. Because of her physical condition she was helpless to thwart further taking of the Satey's property, hence no other motive is readily apparent.
The trial court's fourth aggravating circumstance, that the murder was especially heinous, atrocious, or cruel, on the other hand, is insufficiently supported by the record. The murder of a disabled and defenseless elderly woman is a vile and despicable act. But under the standard set forth in State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974), an especially heinous, atrocious, or cruel homicide is one
where the actual commission of the capital felony was accompanied by such additional facts as to set the crime apart from the norm of capital felonies  the conscienceless or pitiless crime which is unnecessarily torturous to the victim.
Id. at 9. Directing a pistol shot to the head of the victim does not establish a homicide as especially heinous, atrocious, or cruel. Kampff v. State, 371 So.2d 1007 (Fla. 1979). Although Mr. Satey testified that he heard his wife moan after being shot, there was no evidence of whether she was conscious after being shot, not did the medical examiner indicate how long Mrs. Satey survived or what degree of pain, if any, she suffered. Although the helpless anticipation of impending death may serve as the basis for this aggravating factor, there is no evidence to prove that Mrs. Satey knew for more than an instant before she was shot what was about to happen to her. Similarly, as pitiable as were Mr. Satey's vain efforts to dissuade his attackers from harming his wife, it is the effect upon the victim herself that must be considered in determining the existence of this aggravating factor. See Riley v. State, 366 So.2d at 21.
Finding the evidence insufficient to support one aggravating circumstance, when there are four valid aggravating circumstances and no mitigating circumstances, does not warrant a reversal of the sentence. Demps v. State, 395 So.2d 501 (Fla.), cert. denied, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981); Shriner v. State, 386 So.2d 525 (Fla. 1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 829 (1981); Elledge v. State, 346 So.2d 998 (Fla. 1977).[1]
Two other asserted errors during the sentencing phase of Clark's trial do not merit extensive discussion. The trial judge, following the standard criminal instructions, refused to instruct the jury that the aggravating circumstances of killing during the commission of a robbery and for pecuniary gain must be treated as a single factor. Clark argues that the relative closeness of the jury's vote on its recommended sentence  eight to four in favor of death  suggests that the improper consideration of these two circumstances as separate factors may have been decisive in its arriving at a recommendation of death. Such an argument is sheer conjecture. Moreover, the sentencing order clearly shows that the trial court, upon whom the sentencing responsibility actually rests, did not improperly count these factors twice. Similarly without merit is the contention *978 that the trial court erred in refusing to strike testimony as to the sentence Clark received for a 1972 robbery conviction. Clark argues that mentioning the twenty-year sentence he received for the previous crime prejudiced him by suggesting the 1971 robbery was especially serious or violent. This argument is without merit since any robbery is, as a matter of law for purpose of the capital penalty aggravating circumstance, a felony involving the use or threat of violence. Simmons v. State, 419 So.2d 316 (Fla. 1982).
Finally, Clark has presented an attack upon the constitutionality of section 921.141, Florida Statutes (1981), concerning the death penalty. The essence of the constitutional argument is as follows: By setting up classes of defendants punishable by death, to wit, felony murderers and premeditated murderers, and by then imposing an "automatic" aggravating circumstance only upon a defendant convicted of felony murder, Florida has violated the equal protection clause of the United States Constitution because such a statutory classification bears no reasonable relationship to the legitimate state interests in punishment and deterrence of crime. Clark also contends that the aggravating circumstance that the homicide occurred during the commission or attempted commission of a felony is unconstitutional in that it "automatically" mandates the death penalty upon conviction of felony murder, in the absence of mitigating circumstance.[2]
We have considered, and rejected, arguments substantially the same as these in Menendez v. State, 419 So.2d 312 (Fla. 1982), and White v. State, 403 So.2d 331 (Fla. 1981), cert. denied, ___ U.S. ___, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983). The constitutional attacks are no more persuasive in conjunction with the facts of Clark's case.
We conclude that Clark has failed to demonstrate reversible error in any of the trial court's rulings or in the conduct of his trial. We further conclude that substantial competent evidence exists in the record to support both the conviction and sentence. Having so concluded, we affirm the judgment of the trial court.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
ADKINS, J., concurs with conviction, but concurs in result only in sentence.
NOTES
[1] The trial judge did not accept as nonstatutory mitigating circumstances psychiatric testimony and evidence that Clark was a recent father who loved and supported his illegitimate son.
[2] The state has cogently argued that Mr. Clark lacks standing to present these constitutional arguments since the trial court properly found no mitigating circumstances and two aggravating circumstances other than that the homicide occurred during the commission of a robbery. We take this opportunity, however, to make abundantly clear our view that § 921.141, Fla. Stat., does not unconstitutionally mandate the death penalty for felony murder and that it comports fully with the constitutional requirements of equal protection and due process, as well as the prohibition against cruel and unusual punishment.