453 So.2d 786 (1984)
Davidson Joel JAMES, Appellant,
v.
STATE of Florida, Appellee.
No. 62557.
Supreme Court of Florida.
May 24, 1984.
Rehearing Denied August 30, 1984.
*789 Judge C. Luckey, Jr., Public Defender and Brian Donerly, Assistant Public Defender, Thirteenth Judicial Circuit, Tampa, Florida; and Jerry Hill, Public Defender and Robert F. Moeller, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida, for Appellant.
Jim Smith, Atty. Gen., and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Davidson James appeals his conviction of first-degree murder and sentence of death. We have jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution, and affirm both the conviction and sentence.
A grand jury indicted James for the first-degree premeditated murder of Dorothy Satey, the attempted first-degree murder of her husband, Felix Satey, and the armed robbery of Mr. Satey. At trial the jury convicted James of all counts as charged and recommended the death penalty. The court sentenced James to death for the murder and to consecutive life sentences for the other crimes.
The crimes occurred on October 30, 1981 when Larry Clark and James entered a sign shop owned and operated by the Sateys. After Clark shot Satey twice and robbed him, he and James entered the office/residential portion of the premises. Satey pleaded with them not to harm his wife who was incapacitated due to a physical disability, but then heard a gunshot followed by his wife's moaning. She died from a single gunshot wound to the head. (In a separate trial Clark received the death penalty for her murder. Clark v. State, 443 So.2d 973 (Fla. 1984)).
The night of the murder a detective awakened Satey, who had undergone surgery and who had been sedated, in his hospital room and asked him to look at photographs of five individuals. Satey, who did not have his eyeglasses at the time, tentatively identified the photographs of Larry Clark and of another person as being the men who shot and robbed him and his wife. Later, while wearing his glasses, Satey identified Clark from another photopack and identified James from a third group of pictures. The other person tentatively chosen from the first photopack turned out to be an unidentified juvenile[1] whose picture happened to be on file with the police.[2] The police apparently did not try to find and question the juvenile, and James now claims that withholding detailed information about him violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
Brady provides that
suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment irrespective of the good faith or bad faith of the prosecution.
Id. at 87, 83 S.Ct. at 1196. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), however, qualifies Brady's broad holding somewhat:
[T]o reiterate a critical point, the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial.
Id. at 108, 96 S.Ct. at 2400. Moreover, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality' in the constitutional sense." Id. at 109-10, 96 S.Ct. at 2400-01.
Florida Rule of Criminal Procedure 3.220(a)(2) provides that the state shall disclose "any material information within the State's possession or control which tends to negate the guilt of the accused as to the offense charged." The purpose of the rules of procedure was to avoid obtaining convictions by suppressing evidence favorable to a defendant. Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. *790 denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977). In the absence of actual suppression of evidence favorable to an accused, however, the state does not violate due process in denying discovery. Antone v. State, 410 So.2d 157 (Fla. 1982). This is especially true where a defendant and the state have the same access to the sought-after information. See State v. Counce, 392 So.2d 1029 (Fla. 4th DCA 1981).
In the instant case the unidentified photograph belonged to a juvenile with sealed records, which might have contained the information James requested. Because of the confidentiality of those records, they could be disclosed by the state or examined by James only on a court order. § 39.12, Fla. Stat. (1981). James concedes that he was aware of the possible existence of the photograph. Further, he raises only the "mere possibility" that the information might be "material" and, apparently, did not seek a court order pursuant to section 39.12. We see no Brady violation here. The photograph was equally accessible to the defense and the prosecution. Indeed, the defense was in a stronger position than the prosecution to argue that the confidential juvenile records should be opened to discovery. We find that the trial court did not err in denying the motion for sanctions for failure to provide discovery.
James also sought sanctions for the state's failure to produce a tape recording of Satey's call to the police reporting the shootings and robbery. The state did not concede that such a tape actually ever existed, but, not being able to find the tape, theorized that due to the passage of time any such tape would have been routinely erased prior to James' request for its production. James has not shown that what Satey said when calling the police would have been material. Moreover, there is no lack of due process if the requested material would not have been beneficial. State v. Sobel, 363 So.2d 324 (Fla. 1978). In summary, there was no showing that the tape recording existed, was suppressed, was material, or was exculpatory. The nonproduction of the tape did not prejudice James,[3] and the trial court did not err in refusing to grant sanctions. Sobel; Weise v. State, 357 So.2d 755 (Fla. 4th DCA 1978).
As his second point on appeal James claims that the trial court erred in allowing an expert to use parole reports written by James as known examples of his handwriting. The state did not publish these reports to the jury and did not disclose the nature of the writings. The trial court did not err in allowing the expert to use the reports in his trial testimony.
As his last challenge to the conviction phase of his trial, James charges that the court improperly instructed the jury regarding felony murder. James claims that the state failed to establish "the essential element of nonconsent to entry" and that, therefore, no evidence supported the burglary felony-murder instruction. We recently held that consent is an affirmative defense to, rather than nonconsent an element of, burglary. State v. Hicks, 421 So.2d 510 (Fla. 1982). The critical element in a charge of burglary "is that a defendant enter or remain in the premises `with the intent to commit an offense therein.'" Id. at 512. The state's evidence met this test, and we find no error in the felony-murder instruction given here.
James makes several attacks on the instructions given during the penalty proceedings. The trial court, however, gave the standard instructions, and we find no error in his denying the instructions James requested. Moreover, we find no error in the "majority" language used in the verdict form because the trial court orally instructed the jury that life imprisonment would be the appropriate recommendation on a vote of six or more jurors. See Hitchcock v. State, 432 So.2d 42 (Fla. 1983).
*791 One instruction, however, requires discussion. In Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the United States Supreme Court reversed our affirmance of Enmund's conviction and sentence of death for first-degree murder[4] because Enmund himself did not kill, attempt to kill, or intend that a killing take place or that lethal force be employed. James, the accomplice in the instant robbery/killing, asked the trial court to give a penalty proceeding instruction based on Enmund because he, like Enmund, did not commit the actual murder.
The trial court rejected part of James' proposed instruction, but, based on Enmund, instructed the jury as follows:
In addition to your deliberations on the penalty which you will recommend to me, there is one other task which you must perform. You need to find whether Davidson Joel James killed Dorothy Satey or attempted to kill Dorothy Satey or intended that a killing take place, or intended that a lethal force would be employed.
In determining this, you will rely on the same evidence that you heard in the first phase of this trial. You will use the same rules for deliberations that you were given in the first instructions, and weigh the evidence in the same manner.
Again, the burden of proof is on the State. The State must prove beyond and to the exclusion of every reasonable doubt that Davidson Joel James caused or intended to cause the death of Dorothy Satey, or intended to kill her, or intended that lethal force would be employed.
A reasonable doubt is defined as it was in the first phase, and may arise from the evidence, a conflict in the evidence or the lack of evidence.
Your verdict finding that Davidson Joel James did or did not kill Dorothy Satey, did or did not intend her death, or did or did not intend that lethal force would be employed, must be by a majority of the jury.
You will be given two verdict forms which I will now read to you:
"We, the jury, by a majority of ____, find that Davidson Joel James killed Dorothy Satey, or attempted to kill her, or intended that a killing take place or intended that lethal force would be employed;" or
"We, the jury, by a majority of ____, find that Davidson Joel James did not kill Dorothy Satey, nor attempt to kill her, nor did he intend a killing take place, nor did he intend that lethal force be employed."
By an eleven-to-one vote the jury found that James killed the victim or that he "attempted to kill her, or intended that a killing take place, or intended that lethal force would be employed."[5]
James now claims that the evidence did not support the jury's finding on the Enmund issue and that the court erred in omitting part of the proposed instruction and in not requiring that the Enmund finding be unanimous. After reviewing the record, we disagree with James and find the evidence sufficient to support the jury's finding. Prior to Mrs. Satey's murder, Mr. Satey had already been shot and robbed. The jury could reasonably infer, therefore, that James, by his continued presence, intended or contemplated that lethal force might be used or that life might be taken. We also hold that the Enmund instruction given by the court follows the holding of *792 that case and that the court did not err in refusing to give part of the proposed instruction. Finally, the United States Supreme Court has never held that jury unanimity is a requisite of due process,[6] and in Alvord v. State, 322 So.2d 533 (Fla. 1975), cert. denied, 428 U.S. 923, 96 S.Ct. 3234, 49 L.Ed.2d 1226 (1976), this Court held that the jury in a capital case could recommend an advisory sentence by a simple majority vote. We do not find that unanimity is necessary when the jury considers this issue.
In sentencing James to death the trial court found no mitigating circumstances, but found that five of the aggravating circumstances listed in subsection 921.141(5), Florida Statutes (1981), applied. The aggravating factors found by the court are: 1) prior conviction of violent felonies; 2) committed during burglary and robbery; 3) committed for the purpose of avoiding or preventing arrest; 4) heinous, atrocious, and cruel; and 5) cold, calculated, and premeditated. James now challenges all but the first aggravating circumstance.
We disagree with James' claim that the court improperly found the felony-murder aggravating circumstance. We find that ample evidence supports the applicability of this factor. James complains that the court did not instruct the jury on the felony-murder aggravating circumstance, but we find no error in this instance. The court did instruct on pecuniary gain as an aggravating factor, but, in finding the presence of that factor, concluded that it merged with the felony-murder circumstance. Moreover, the jury had been fully instructed on felony murder during the first portion of the trial, and, during the penalty instructions, the court told the jury it could rely on the evidence presented previously.
We next observe that it is clear that this entire episode was a joint operation by James and Clark. The jury found that James met the Enmund test. Although Clark did the actual killing, James was present and actively participated in the events. In such a situation we have held that who is the actual killer is not determinative because each participant is responsible for the acts of the other. Hall v. State, 403 So.2d 1321 (Fla. 1981). Under these circumstances we find that the aggravating circumstances which arose because of the motive and method of the killing are equally applicable to the two participants. Considered in this light the trial judge properly found all aggravating factors except especially heinous, atrocious, and cruel. See Clark v. State, 443 So.2d 973 (Fla. 1984).
We are left, therefore, with four valid aggravating circumstances and one invalid aggravating circumstance. If there are no established mitigating circumstances, striking invalid aggravating circumstances does not necessarily mean that resentencing is required. Francois v. State, 407 So.2d 885 (Fla. 1981), cert. denied, 458 U.S. 1122, 102 S.Ct. 3511, 73 L.Ed.2d 1384 (1982). In the instant case James presented a considerable amount of evidence in an attempt to mitigate his sentence. The trial judge, however, found that no mitigating circumstances existed. Finding the evidence insufficient to support one aggravating circumstance, when there are four valid aggravating circumstances and no mitigating circumstances, does not warrant a reversal of the sentence. Demps v. State, 395 So.2d 501 (Fla.), cert. denied, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981); Shriner v. State, 386 So.2d 525 (Fla. 1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 829 (1981); Elledge v. State, 346 So.2d 998 (Fla. 1977).
Following the jury's recommendation, James asked that the jury be polled. The court refused to do so, but, a week later, reconvened the jury and polled its members as to whether death was the majority's recommended sentence. James claims that this constitutes reversible error.
As a general rule, once a jury is discharged it cannot be reimpaneled to hear *793 matters relating to the same case. Lee v. State, 294 So.2d 305 (Fla. 1974). This is so because after discharge the members lose their separate identity as a jury and because they are subject to outside influences. Id.; Masters v. State, 344 So.2d 616 (Fla. 1st DCA), cert. denied, 352 So.2d 173 (Fla. 1977). These concerns, however, are not present in this case. The jury members when reconvened, merely had to say "yes" or "no," they did not have to hear or consider anything more relating to the case. We find no reversible error in the instant case because reconvening the jury was limited to clarifying a procedural matter.
As his last point on appeal, James requests that his sentence for robbery be vacated pursuant to State v. Hegstrom, 401 So.2d 1343 (Fla. 1981). We find Hegstrom inapplicable to this case because the robbery of Mr. Satey was a separate and distinct crime from the robbery[7] and murder of Mrs. Satey. We therefore find no error regarding the conviction and sentence for robbery. Norris v. State, 429 So.2d 688 (Fla. 1983).
We find no reversible error regarding James' conviction of first-degree murder and affirm that conviction. We also affirm the sentence of death.
It is so ordered.
ALDERMAN, C.J., and ADKINS, OVERTON, McDONALD, EHRLICH and SHAW, JJ., concur.
BOYD, J., concurs specially with an opinion, in which ADKINS, J., concurs.
BOYD, Justice, concurring specially.
I concur in the results of the majority opinion affirming the convictions of first-degree murder and robbery and the sentence of death.
I find the trial court's special "Enmund"[1] instruction, and the majority's discussion of it, unnecessary because the evidence showed that appellant shared in a premeditated design to effect the death of Mrs. Satey. See Smith v. State, 424 So.2d 726 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983). The evidence showed that the fatal shooting of Mrs. Satey was not precipitated by any kind of resistance or provocation from the robbery victims nor by any sudden interference by a third party. The evidence also showed that not only Mrs. Satey but also her husband was shot, that he was shot in the chest and was shot more than once. There was also evidence that after fatally shooting Mrs. Satey the robbers returned from the residential portion of the building to the sign shop looking for Mr. Satey in order to make sure he was dead but that he hid from them and they had to flee before accomplishing their purpose. There was not the faintest suggestion in the evidence that James tried to stop Clark from shooting the elderly victims, nor that he tried to withdraw from the scene in any way. Therefore, this case is doubly distinguishable from Enmund because not only was James a personally present principal (i.e., actually rather than constructively present) in the felonies of robbery and burglary, he was also a personally present aider and abettor of intentional murder, fully sharing in the actual perpetrator's premeditated design to effect death. See §§ 782.04(1)(a) & 777.011, Fla. Stat. (1981). James' liability is not vicarious but direct. Because of the sufficiency of the evidence of premeditation, the trial court need not have concerned itself with the Enmund question. See Smith v. State, 424 So.2d at 733.
The existence of sufficient evidence that appellant shared in the premeditated design to kill Mrs. Satey also obviates the Hegstrom[2] argument answered by the majority *794 opinion. This is simply not a felony-murder case, so there is no question of the robbery being a lesser included offense of the murder.
Regarding the sentence of death, I concur in the Court's affirmance thereof but disagree with the conclusion that the trial court erred in finding the murder of Mrs. Satey to have been especially heinous, atrocious, or cruel. The murder of the elderly victim was preceded by the infliction of severe mental anguish as she heard the intruders shoot her husband and then come looking for her. Moreover, the evidence showed that the wheelchair-bound woman, powerless to escape or resist, did not die instantly but moaned in pain as her life was gradually extinguished. These circumstances clearly set the crime apart from the simple norm of an intentional murder. See Buford v. State, 403 So.2d 943 (Fla. 1981), cert. denied, 454 U.S. 1163, 1164, 102 S.Ct. 1037, 1039, 71 L.Ed.2d 319, 320 (1982); Hoy v. State, 353 So.2d 826 (Fla. 1977), cert. denied, 439 U.S. 920, 99 S.Ct. 293, 58 L.Ed.2d 265 (1978); Knight v. State, 338 So.2d 201 (Fla. 1976); State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). This Court should construe aggravating circumstances according to the plain language adopted by the legislature. The taking of the life of Mrs. Satey, which her husband begged James and Clark to spare, was cold-blooded, pitiless, depraved, merciless, vile, and especially heinous, atrocious, and cruel. I therefore do not agree with the disapproval of the trial court's application of this circumstance to this murder, to which it clearly applies.
ADKINS, J., concurs.
NOTES
[1] § 39.12, Fla. Stat. (1981), provides that juvenile records are confidential and can be inspected only on court order by persons deemed to have a proper interest in such records.
[2] § 39.031(2)(c), Fla. Stat. (1981), provides that photographs of juvenile offenders can be distributed to law enforcement agencies.
[3] Prejudice is the key question in any alleged discovery violation. Holman v. State, 347 So.2d 832 (Fla. 3d DCA 1977).
[4] Enmund v. State, 399 So.2d 1362 (Fla. 1981).
[5] Enmund's petition presented "the question whether death is a valid penalty under the Eighth and Fourteenth Amendments for one who neither took life, attempted to take life, nor intended to take life." Enmund v. Florida, 458 U.S. 782, 787, 102 S.Ct. 3368, 3371, 73 L.Ed.2d 1140 (1982) (footnote omitted). The Supreme Court answered the question in the negative and reversed "[b]ecause the Florida Supreme Court affirmed the death penalty in this case in the absence of proof that Enmund killed or attempted to kill, and regardless of whether Enmund intended or contemplated that life would be taken." Id. at 801, 102 S.Ct. at 3379. We assume that the death penalty could be appropriate for a defendant who meets these criteria.
[6] Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972).
[7] Evidence showed that some money had been taken from the office where Mrs. Satey's body was found.
[1] See Enmund v. State, 399 So.2d 1362 (Fla. 1981), reversed in part, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (reversal as to death sentence only).
[2] State v. Hegstrom, 401 So.2d 1343 (Fla. 1981).