PER CURIAM.
The appellant, Joel Dale Wright, was convicted of first-degree murder, sexual battery, burglary of a dwelling, and second-degree grand theft. In accordance with the jury’s sentence recommendation, the trial judge imposed the death sentence for the first-degree murder. The appellant also received sentences of 99 years for sexual battery, 15 years for burglary, and 5 years for grand theft. We have jurisdiction, article V, section 3(b)(1), Florida Constitution, and we affirm the convictions and sentences.
The facts reflect that the body of a 75-year-old woman was found in the bedroom of her home on February 6, 1983. The victim was discovered by her brother, who testified that he became concerned when she failed to respond to his knock on the door. Finding all the doors to her home locked, he entered through an open window at the rear of the house and subsequently found her body. Medical testimony established that the victim died between the evening of February 5 and the morning of February 6 as a result of multiple stab wounds to the neck and face, and that a vaginal laceration could have contributed to the victim’s death.
The state’s primary witness, Charles Westberry, testified that shortly after daylight on the morning of February 6, appellant came to Westberry’s trailer and confessed to him that he had killed the victim; that appellant told him he entered the victim’s house through a back window to take money from her purse and, as appellant wiped his fingerprints off the purse, he saw the victim in the hallway and cut her throat; and that appellant stated he killed the victim because she recognized him and he did not want to go back to prison. Westberry further stated that appellant counted out approximately $290 he said he had taken from the victim’s home and that appellant asked Westberry to tell the police *1279 that appellant had spent the night of February 5 at Westberry’s trailer. When Westberry related appellant’s confession to his wife several weeks later, she notified the police. The record also reflects that a sheriff’s department fingerprint analyst identified a fingerprint taken from a portable stove located in the victim’s bedroom as belonging to appellant, and that, over appellant’s objection, the court instructed the jury on the Williams rule and permitted Paul House to testify for the state that approximately one month before the murder, he and appellant had entered the victim’s home through the same window that was found open by the victim’s brother, and had stolen money.
In his defense, appellant denied involvement in the murder and introduced testimony that, between 5:00 and 6:00 p.m. on February 5, a friend had dropped him off at his parents’ home, which neighbored the victim’s, and that he left at 8:00 p.m. to attend a party at his employer’s house. Testifying in his own behalf, appellant stated that he returned to his parents’ home, where he resided, at approximately 1:00 a.m. on February 6, but was unable to get into the house because his parents had locked him out. Appellant testified that he then walked by way of Highway 19 to Westberry’s trailer, where he spent the night. Appellant also presented a witness who testified that, late in the night of February 5 and early in the morning of February 6, he had seen a group of three men whom he did not recognize in the general vicinity of the victim’s home.
After the close of the evidence but prior to final arguments, appellant proffered the newly discovered testimony of Kathy Waters, who had listened to portions of the trial testimony, followed newspaper accounts of the trial, and discussed testimony with various persons attending the trial. Her proffered testimony revealed that, shortly after midnight on February 6, she had observed a person, who may have been similar in appearance to appellant, walking along Highway 19, and had also seen three persons, whom she did not recognize, congregated in the general vicinity of the victim’s house. The trial court denied appellant’s motion to re-open the case, noting that the rule of sequestration is rendered “meaningless” when a witness is permitted “to testify in support of one side or the other, almost as if that testimony were tailor-made,” after the witness has conferred with numerous people concerning the case. The jury found appellant guilty as charged.
Appellant, in the penalty phase, presented the testimony of members of his family relating to his character and upbringing, as well as a nine-year-old psychological report which indicated that at that time appellant was depressed, emotionally immature, and had difficulty controlling his impulses. By a nine-to-three vote, the jury recommended that appellant receive the death sentence.

Guilt Phase

The appellant challenges his first-degree murder conviction on the grounds that the trial court erred in: (1) restricting appellant’s right to cross-examine several witnesses; (2) permitting a witness to comment upon appellant’s exercise of his right to remain silent; (3) restricting defense counsel’s final argument and/or refusing to instruct the jury on the law governing circumstantial evidence; (4) refusing to allow the appellant to present the testimony of Kathy Waters; and (5) instructing the jury to consider evidence of appellant’s pri- or burglary of the victim’s house. Appellant also challenges his grand theft conviction on the ground that the corpus delecti was not established other than by appellant’s confession. We reject each of appellant’s contentions and find only the issues relating to the exclusion of Waters’ testimony and the admissibility of the Williams rule evidence merit discussion.
With regard to the first issue for discussion, appellant contends it was reversible error for the trial judge to deny the proffered witness an opportunity to testify. The record reveals that, during the hearing held by the trial court on the matter, the defense asserted that Waters’ observation of three persons in the vicinity of the vie- *1280 tim’s home and one person walking on State Road 19 was relevant and exculpatory in that it tended to corroborate appellant’s otherwise uncorroborated testimony and could imply to the jury that others had an opportunity to break into the victim’s home and kill her. While acknowledging that “there is no question that the violation of the rule [of sequestration] was inadvertent,” the state argued that it “could very well be substantially prejudiced” if the witness was permitted to testify. The transcript of the hearing also reflects that the excluded witness did not become aware of the fact that she possessed relevant information until the morning her testimony was proffered, at which time she came forward of her own volition. In ruling to exclude the evidence, the trial judge attributed no “bad motive or bad faith” to the defense in its failure to proffer the testimony before the close of the evidence.
In declaring that the sequestration rule would be rendered “meaningless” if the witness were allowed to testify, it is clear that the trial judge applied that rule as a strict rule of law. This Court has frequently pointed out that the rule of sequestration is intended to prevent a witness’s testimony from being influenced by the testimony of other witnesses in the proceeding. See Steinhorst v. State, 412 So.2d 332 (Fla.1982); Odom v. State, 403 So.2d 936 (Fla.1981), cert. denied, 456 U.S. 925, 102 S.Ct. 1970, 72 L.Ed.2d 440 (1982); Dumas v. State, 350 So.2d 464 (Fla.1977); Spencer v. State, 133 So.2d 729 (Fla.1961), cert. denied, 369 U.S. 880, 82 S.Ct. 1155, 8 L.Ed.2d 283 (1962). We have expressly stated the rule must not be enforced in such a manner that it produces injustice. Steffanos v. State, 80 Fla. 309, 86 So. 204 (1920). Further, we have recognized that enforcement of the rule against a defendant seeking to introduce the testimony of a witness who has heard testimony in violation of the rule implicates the defendant’s sixth amendment right to present witnesses in his own behalf. See Steinhorst; cf. Williams v. Florida, 399 U.S. 78, 83 n. 14, 90 S.Ct. 1893, 1897 n. 14, 26 L.Ed.2d 446 (1970). Before it excludes testimony on the ground that the sequestration rule was violated, the trial court must determine that the witness’s testimony was affected by other witnesses’ testimony to the extent that it substantially differed from what it would have been had the witness not heard the testimony. Because of the sixth amendment ramifications, the court must carefully apply this test before it excludes any material testimony offered by a defendant in a criminal case, and should also consider whether the violation of the rule of sequestration was intentional or inadvertent and whether it involved bad faith on the part of the witness, a party, or counsel. In the instant case, the trial judge found the violation was inadvertent, but failed to evaluate whether or not Waters’ testimony was affected to any substantial degree by her presence in the courtroom or conversations with trial spectators. We realize that trial courts must, of necessity, have discretion in the enforcement of the rule of sequestration. In the instant case, we find the trial judge erred in failing to exercise his discretion to determine whether exclusion was warranted under the circumstances, and, instead, applied the sequestration rule as a strict rule of law.
Having determined that the trial court erred, we must now consider whether that error was harmless. The record indicates Kathy Waters would have testified that, shortly after midnight on February 6, she saw three persons in the neighborhood of the victim’s house; that an individual of the appellant’s general description was walking in the opposite direction from the victim’s home; and that she knew appellant and would have offered him a ride had she recognized the person on Highway 19 as appellant. The record already contained unrefuted testimony that three individuals were gathered near the victim’s home. The defense did not contend that the proffered witness would purport to identify appellant as being the person she observed on the road or that her testimony, if accepted by the jury, would require a finding by the jury that appellant did not commit the murder. Based upon our review of the record, *1281 including the nature of the proffered testimony, we conclude that the excluded evidence would not have affected the verdict and its exclusion was harmless beyond a reasonable doubt. See United States v. Hasting, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); Gurganus v. State, 451 So.2d 817 (Fla.1984). Cf. United States v. Webster, 750 F.2d 307 (5th Cir.1984), cert. denied, — U.S. -, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985); United States v. Smith, 736 F.2d 1103 (6th Cir.), cert. denied, — U.S. -, 105 S.Ct. 213, 83 L.Ed.2d 143 (1984).
The second issue concerns appellant’s assertion that the trial court committed reversible error by allowing the jury to consider evidence of a prior crime committed by appellant “for the limited purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, or the absence of mistake or accident on the part of the defendant.” * In Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), this Court held that evidence of another crime is admissible when relevant to prove a material issue, unless it is relevant only to show bad character or propensity. See also Shriner v. State, 386 So.2d 525 (Fla.1980), cert. denied, 449 U.S. 1103, 101 S.Ct. 899, 66 L.Ed.2d 829 (1981); Ashley v. State, 265 So.2d 685 (Fla.1972). The Williams holding is codified by section 90.404(2)(a), Florida Statutes (1983), and incorporated into Florida Standard Jury Instructions. In Drake v. State, 400 So.2d 1217 (Fla.1981), we stated that to be legally relevant to show identity, it is not enough that the factual situations sought to be compared bear a “general similarity” to one another. Rather, the situations must manifest “identifiable points of similarity.” Id. at 1219. We find the evidence that appellant had previously burglarized the victim’s house and, in so doing, had utilized the identical point of entry used on the date of the victim’s murder, is, under the Williams rule, legally relevant to show identity and to show that Wright knew that point of entry was available. We also note that appellant utilized this evidence in testifying that his fingerprint had been left in the victim’s bedroom when he and Paul House burglarized her residence.

Sentencing Phase

In imposing the death sentence, the trial judge found the following four aggravating circumstances: (1) the murder took place after the defendant committed rape and burglary; (2) the murder was committed for the purpose of avoiding or preventing a lawful arrest; (3) the murder was especially heinous, atrocious, and cruel; (4) the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification. The trial court found no mitigating circumstances. The appellant raises four challenges to the sentencing phase of his trial: (1) the trial court erred in finding that the murder was committed for the purpose of preventing a lawful arrest; (2) the trial court erred in finding that the murder was cold, calculated, and premeditated; (3) section 921.141, Florida Statutes (1983), violates the federal constitution by depriving the appellant of his right to a trial by his peers; and (4) Florida’s capital sentencing statute is unconstitutional on its face and as applied. We have previously considered *1282 and expressly rejected the latter two arguments. See, e.g., Johnson v. State, 393 So.2d 1069 (Fla.1980), cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981); Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976), aff'g 315 So.2d 461 (Fla.1975).
Appellant’s first contention is without merit. He argues that, because the victim was not a law enforcement officer, the trial judge’s finding that the murder was committed to prevent arrest is defective because it fails to show that the dominant motive was the elimination of a witness. The record reflects that Westberry testified appellant admitted he killed the victim because she recognized him and he did not want to return to prison. This evidence supports the trial judge’s finding that appellant committed the capital felony for the purpose of avoiding arrest. See Clark v. State, 443 So.2d 973 (Fla.1983), cert. denied, — U.S.-, 104 S.Ct. 2400, 81 L.Ed.2d 356 (1984); Johnson v. State, 442 So.2d 185 (Fla.1983), cert. denied, — U.S. -, 104 S.Ct. 2182, 80 L.Ed.2d 563 (1984); Vaught v. State, 410 So.2d 147 (Fla.1982).
We agree with appellant’s assertion that the trial court erred in finding the murder to be cold, calculated, and premeditated. This aggravating circumstance is generally found in murders that, by their nature, exhibit a heightened degree of premeditation, such as contract or execution-style murders. See Rembert v. State, 445 So.2d 337 (Fla.1984); Washington v. State, 432 So.2d 44 (Fla.1983); McCray v. State, 416 So.2d 804 (Fla.1982). Such heightened premeditation was not proved beyond a reasonable doubt in this case. Because the court properly found there were no mitigating and three aggravating circumstances, we conclude the imposition of the death penalty was correct and find it unnecessary to remand for a new sentencing hearing. See James v. State, 453 So.2d 786 (Fla.), cert. denied, — U.S.-, 105 S.Ct. 608, 83 L.Ed.2d 717 (1984); White v. State, 403 So.2d 331 (Fla.1981), cert. denied, 463 U.S. 1229, 103 S.Ct. 3571, 77 L.Ed.2d 1412 (1983); Demps v. State, 395 So.2d 501 (Fla.), cert. denied, 454 U.S. 933, 102 S.Ct. 430, 70 L.Ed.2d 239 (1981); Elledge v. State, 346 So.2d 998 (Fla.1977). We also find the imposition of the death penalty in this case is proportionately correct. See, e.g., Stewart v. State, 420 So.2d 862 (Fla.1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1802, 76 L.Ed.2d 366 (1983); Booker v. State, 397 So.2d 910 (Fla.), cert. denied, 454 U.S. 957, 102 S.Ct. 493, 70 L.Ed.2d 261 (1981); King v. State, 390 So.2d 315 (Fla.1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981), receded from on other grounds, Strickland v. State, 437 So.2d 150 (Fla.1983).
For the reasons expressed, we affirm appellant’s convictions and sentence of death.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.

 See Fla.Std. Jury Instr. (Crim.), “Williams Rule." That instruction reads:
The evidence you are about to receive concerning evidence of other crimes allegedly committed by the defendant will be considered by you for the limited purposes of proving [motive] [opportunity] [intent] [preparation] [plan] [knowledge] [identity] [the absence of mistake or accident] on the part of the defendant and you shall consider it only as it relates to those issues.
However, the defendant is not on trial for a crime that is not included in the [information] [indictment].
We agree with appellant that the trial judge would have been well-advised to limit his instruction to those bracketed elements that were applicable under the facts of the case; however, the judge’s failure to so limit the instruction was not error.